[Civ. No. 17297. Second Dist., Div. Three. July 7, 1950.]

M. W. ENGLEMAN, Respondent, v. BANK OF AMERICA NATIONAL TRUST AND SAVINGS ASSOCIATION et al., Appellants.

Samuel B. Stewart, Jr., Hugo A. Steinmeyer and Robert H. Fabian for Appellants.

Hindin, Girard, Lewis & Green for Respondent.

SHINN, P. J.—Action for declaratory relief instituted by plaintiff, assignee for the benefit of creditors of W. B. Stoddard, doing business as Pacific Pilot's Plan, Inc. (hereinafter called "Pacific"), for a judicial declaration that he is entitled to recover from the (Gardena Branch) Bank of America National Trust and Savings Association (hereinafter referred to as the "Bank") a sum of money allegedly owing his assignor. The case was tried under a stipulation of facts and the court gave judgment for plaintiff in the sum of $3,449.68; defendant Bank appeals.

Pacific was engaged in selling courses in flight instruction with the actual ground and flight instruction being handled by other organizations. The students would sign contracts and notes in payment for this course, and Pacific would sell the contracts and notes to the Bank. The sales were made pursuant to two contracts entered into between the Bank and Pacific —one of these contracts was made with the Bank at its Gardena Branch, and the other at its Five Points Branch at San Diego.

The contract entered into by Pacific with the Gardena Branch on August 27, 1946, provided that all notes signed by the students were to be accepted by Gardena at its sole discretion. The purchase price of "any paper discounted pursuant to this agreement shall be 39 per cent of the face amount thereof, and I, [W. B. Stoddard] agree that upon said purchase price being paid or credited to me, full title to the paper shall pass to you. If an amount in excess of the purchase price plus a discount of 6 per cent of the face amount (minimum charge $2.50) of any discounted note is realized by you, the amount so realized shall be applied as follows:

"1. To satisfy my obligation, if any, under this contract, and I agree that you are authorized from such proceeds to cure any default as to any note purchased by the application of such excess; and

"2. Any remaining balance of such excess above 50 per cent of the unpaid balance on all notes sold to you by me and outstanding shall be paid or credited to me annually."

Pacific guaranteed payment of all sums of principal and interest due under the terms of the notes and agreed that Gardena should be under no obligation to sue or proceed against the makers of the notes.

The record shows that the parties to the contract subsequently agreed orally that the 50 per cent reserve provided for was to be increased to 100 per cent.

On September 15, 1947, Pacific entered into a substantially similar contract with the Five Points Branch of the Bank wherein it was provided that the purchase price of any paper discounted "pursuant to this agreement shall be 65 per cent of the face amount thereof, and I [W. B. Stoddard] agree that upon said purchase price being paid or credited to me, full title to the paper shall pass to you. If an amount in excess of the purchase price plus a discount of 6 per cent of the face amount (minimum charge $2.50) of any discounted note is realized by you, the amount so realized shall be applied as follows:

"1. To satisfy my obligation, if any, under this contract, and I agree that you are authorized from such proceeds to cure any default as to any note purchased by the application of any such excess; and

"2. Any remaining balance of such excess above 35 per cent of the unpaid balance on all notes sold to you by me and outstanding shall be paid or credited to me annually."

This contract also provided that Pacific guaranteed all sums of principal and interest due under the notes so discounted.

On March 17, 1948, Pacific wrote to the Gardena Branch stating, in substance, that it understood that Gardena carried in its reserve account for Pacific approximately $6,200. This letter notified Gardena that Pacific had also been discounting notes with the Five Points Branch at San Diego, and authorized it, on the 25th of each month, to transfer any surplus reserve held at Gardena to the Five Points Branch. On April 2, 1948, Pacific wrote to the Gardena Branch informing it that several of its creditors had threatened action and that it had been informed that the authorization of March 17th could be construed as a preference and could be voided. The letter rescinded the instructions and authority to transfer funds contained in the letter of March 17th.

On April 14, 1948, Pacific made an assignment for benefit of creditors and notice thereof was given to the Gardena Branch on April 15, 1948, by the plaintiff herein.

It is stipulated that between the 14th of April, 1948, and November 8, 1948, the date the stipulation of facts was entered into, the Gardena Branch transferred to the Five Points Branch of the Bank, the sum of $3,268.16. It is this sum which is the subject of the controversy; no dispute exists as to the balance of $181.52. It appears that after the 14th of April, 1948, various defaulted notes at Gardena were charged to the balance there, and at the date of the stipulation, the sum of $181.52 remained in the reserve account and that there were no outstanding discounted notes of the plaintiff's assignor at that branch. At that time, after the transfer of funds, the Five Points Branch held a balance of discounted notes in the sum of $224 and a balance in the reserve account in the sum of $111.30. It is further stipulated that subsequent to April 14, 1948, no notes were discounted at either branch of the bank.

■■■ The question presented for determination is whether appellant Bank was entitled to offset the monies owed by it to Pacific at the Gardena Branch against the debt owed to it by Pacific at the Five Points Branch. We are of the opinion that the Bank was not entitled to such an offset. Appellant contends that it had the right of offset by reason of section 440 of the Code of Civil Procedure, and that it also had that right because of its well recognized banker's lien (Civ. Code, § 3054). The right of offset exists in favor of a bank with which a customer makes a general deposit but we are of the opinion that in view of the intention of the parties, as disclosed by the terms of the contract and the practice followed by the bank in handling the account, the trial court properly concluded that the reserve account was not a general deposit, but one which was to be used for a specific purpose.

■■■ There is no particular formula prescribed for the contract involved in making a special deposit or a deposit for a specific purpose. The nature of the deposit is determined by the mutual intent and understanding of the parties. (*American Surety Co.* v. *Bank of Italy,* 63 Cal.App. 149, 159 [218 P. 466].) ■■■ Each contract involved here provided that the collections made by the branch bank were to be held as a reserve account which could be used only in either one of two specified ways: The primary use to which the fund was to be put was to cure the default in any note purchased under that particular contract, or, if no such default existed, the fund was to be paid or credited annually to plaintiff's assignor. The fund with which we are here concerned had accumulated as the result of payments made on notes bought and sold under

the Gardena contract, and had been neither paid, nor credited, to plaintiff's assignor. In other words, the funds remained in the reserve account provided for in the contract.

The reserve fund here involved would seem to be equivalent to the deposit of money for a special purpose. A bank impliedly binds itself, by accepting a special deposit, not to set off against such deposit a debt due it from the depositor. Nor can a bank which accepts a deposit of money for a special purpose, under an agreement that it will pay the amount, when needed, for that purpose, legally appropriate such deposit to discharge the depositor's indebtedness to it. (*Stone* v. *Harris,* 146 Cal. 555, 560 [80 P. 711]; Civ. Code, § 2891; 7 Am.Jur., Banks, § 424, p. 298; 24 A.L.R. 1111, s. 39 A.L.R. 1138, 86 A.L.R. 375, and numerous cases cited there.) Deposits of funds for a special purpose, such as for the purpose of paying such funds to a third person upon the presentation of certain papers or instruments of title (*Bassett* v. *City Bank & Trust Co.,* 115 Conn. 1 [160 A. 60, 81 A.L.R. 1488]); paying bonds (*In re Interborough Consol. Corp.,* 288 F. 334 [32 A.L.R. 932]); paying a mortgage indebtedness; meeting certain checks or classes of checks (*Ballard* v. *Home Nat. Bank,* 91 Kan. 91 [136 P. 935, L.R.A. 1916C 161]; *Payne Bros.* v. *Burnett,* 151 Tenn. 496 [269 S.W. 27, 39 A.L.R. 37]); taking up the depositor's note that has been indorsed to another bank; paying a contractor for work being performed by him (*Sawyer* v. *Connor,* 114 Miss. 363 [75 So. 131, L.R.A. 1918A 61, Ann.Cas. 1918B 388]), have all the attributes of special deposits and are generally termed and construed as such. In addition, the bank has the fiduciary duty of an agent to apply the deposit to the particular purpose for which it was delivered to the bank, and in case of the misapplication of the deposit, it may be followed on the trust fund theory. In *Hing* v. *Lee,* 37 Cal.App. 313 [174 P. 356], mortgages and other instruments were deposited for collection and were given over with specific instructions to collect and remit. The court held that this was a trust transaction, and that the money, if collected, was affected with the trust. (See 8 So.Cal.L.Rev. 122, discussing deposits for specific purposes.)

 Where property is pledged to a bank to secure specific indebtedness of the customer, the bank has no right to hold such property as security for any other obligation. If under the contract of the parties, the reserve fund was to be used to satisfy the obligation of plaintiff's assignor or to be paid

or credited to him annually, the appellant was not entitled to hold it, under its alleged banker's lien, to secure another obligation. "The banker's lien referred to in section 3054 of the Civil Code, was familiar, as a part of the law, long before the enactment of the codes. Section 3054 does not extend its scope. It has always been the rule that a banker holding securities pledged for the payment of a particular debt has no lien upon them for the payment of other claims." (*Berry* v. *Bank of Bakersfield,* 177 Cal. 206, 209 [170 P. 415]; and authorities there cited; *Farmers & Merchants Nat. Bank* v. *Stowell,* 6 Cal.App.2d 373 [44 P.2d 392]; *Bell* v. *Bank of California,* 153 Cal. 234 [94 P. 889].) It was shown by the testimony of an assistant cashier of the Gardena Branch that the Bank considered the reserve fund as a deposit for a specific purpose: The money was to be used to "offset" the contingent liability of Pacific—it could not be drawn upon or charged against by Pacific; it was not available for open credit or to meet overdrafts. The account was handled in this manner. The practical construction of the agreement by the parties, in treating the reserve fund as one to be used for a specific purpose, tends to support the construction placed upon it by the trial court.

Inasmuch as each contract made specific provision for the purpose to which the reserve account was to be put, we are of the opinion that the surplus funds which accrued under one contract could not be used to offset the debt owing by Pacific under the other. For this reason, we find it unnecessary to decide whether the two branches of appellant Bank constitute separate entities or whether, as claimed by appellant, there is but one Bank, a national banking corporation.

The judgment is affirmed.

Vallée, J., concurred.

Wood, J., being disqualified, did not participate herein.