## No. 21122.

### FINANCE ACCEPTANCE COMPANY, FORMERLY FINANCE CORPORATION *v.* JOSEPH BREAUX AND LOIS BREAUX.

(419 P.2d 955)

Decided September 26, 1966.    Opinion modified and as modified adhered to and petitions for rehearing denied November 21, 1966.

Richard M. Huckeby, for plaintiff in error.

Harry E. Carleno, for defendants in error.

*In Department.*

Opinion by Mr. Justice McWilliams.

In a trial to the court upon an agreed statement of facts the Finance Acceptance Company, hereinafter referred to as plaintiff, was awarded judgment against Joseph and Lois Breaux, hereinafter referred to either by name or as the defendants, in the amount of $9,166.99. At the same time the one defendant, Joseph Breaux, received judgment on his counterclaim against the plaintiff in the amount of $869.58. By writ of error plaintiff now seeks reversal of these judgments, contending, in essence, that Joseph Breaux's judgment on his counterclaim should have been "set-off" against its judgment against the two defendants.

In other words, as we understand it, plaintiff urges that Joseph Breaux's judgment on his counterclaim should have been "set-off" in the sense that it should have been subtracted from plaintiff's judgment against the Breauxes. All of which would mean that there would then only be one judgment entered in this entire controversy, namely, a judgment for plaintiff against the defendants for $8,297.41, this sum representing the defendants' total indebtedness to the plaintiff, *i.e.,* $9,166.99 less plaintiff's indebtedness to Joseph Breaux in the amount of $869.58.

The background of this controversy is a tangled one and we shall indulge in no more detail than is absolutely necessary. However, we must recount at least certain of the significant events giving rise to the dispute, in order that our decision shall have meaning.

Joseph Breaux had for many years been an employe of the plaintiff, which employment came to a rather abrupt halt during the latter part of November 1962. As of that particular time the defendants were indebted to the plaintiff in the amount of nearly $10,000, which indebtedness was evidenced by two promissory notes. When this employment was terminated, plaintiff admittedly owed Joseph Breaux the sum of $617.91 as wages due him for certain overtime work. As of this same time, the plaintiff also owed Joseph Breaux an additional sum of $437.04, which sum represented Joseph Breaux's interest in a retirement plan operated by the plaintiff for its employes. This retirement plan was voluntary in nature, in that the employe was not compelled to join it, but could do so at his own election. Joseph Breaux voluntarily elected to become a member of this retirement plan. This plan provided for the monthly withholding of a certain percentage of an employe's wages, with the proviso that if an employe terminated his employment before becoming eligible for retirement benefits, he was then only entitled to the return of the monies thus contributed by him, plus interest.

The matter as to whether any, or all, of Joseph Breaux's claims against the plaintiff should be set-off against plaintiff's claim against the two defendants was really the only disputed issue before the trial court, all the evidentiary facts having been stipulated and agreed to by the parties.

The trial court found that the defendants were in default in their payments to the plaintiff on the two promissory notes and that the total amount then due and owing the plaintiff on these unpaid obligations was $9,652.36. The trial court did "set-off" against this amount the sum of $485.37. Of this set-off, $300 represented money realized by plaintiff in the repossession of defendant's automobile. The remaining portion of the set-off, namely, $185.37, represented 30% of Joseph

Breaux's claim for unpaid wages, a matter which will now be gone into a bit more fully.

As already noted, Breaux's total claim for wages due him was $619.71. This amount was stipulated to by the plaintiff. However, Breaux further claimed that 70% of his wage claim was exempt from levy under C.R.S. 1963, 77-2-4, and that, being exempt from levy, it was by the same token also "exempt" from being in any manner set-off against his indebtedness to plaintiff. The trial court agreed with this position of Breaux, and decreed that only 30% of the total claim for unpaid wages could be set-off against the defendants' indebtedness to plaintiff on the aforementioned promissory notes.

Allowing a set-off, then, in the total amount of $485.37, $300 in connection with the automobile repossession, and $185.37 representing 30% of Breaux's claim for unpaid wages, the trial court entered judgment for plaintiff against the defendants in the sum of $9,166.99, i.e., $9,652.36 less $485.37.

As regards Joseph Breaux's counterclaim, the trial court held that 70% of his claim ($432.54) for unpaid wages could not in any manner be set-off and that accordingly he was entitled to a judgment against the plaintiff in the sum of $432.54. Additionally, the trial court also determined that Joseph Breaux was entitled to the return of all of his contributions into the retirement fund, which totaled $437.04. As regards this particular item, the trial court specifically found "that by contract of the parties this money is not subject to attachment and may not be withheld by plaintiff as a set-off." Accordingly, the trial court entered judgment in favor of Joseph Breaux on his counterclaim and against the plaintiff in a total amount of $869.58, i.e., $432.54 (70% of his wage claim) plus $437.04 (his entire interest in the retirement fund). In other words, the trial court by its judgment clearly held that the amount of Joseph Breaux's judgment against the plaintiff on his counterclaim could not in any manner be

set off against plaintiff's judgment on its claim against the two defendants.

If both plaintiff and the Breauxes were solvent to the end that each could and would satisfy the judgment rendered against them, or it, the parties themselves would have no doubt effected their own set-off. But the real controversy was triggered by the fact that the defendants are insolvent and cannot satisfy the judgment rendered against them, whereas the plaintiff is solvent and fully able to satisfy the judgment rendered against it on Joseph Breaux's counterclaim. It was in this circumstance that Joseph Breaux caused the sheriff to levy on the property of the plaintiff in an effort to get satisfaction of his judgment for $869.58 rendered against plaintiff. The plaintiff takes an extremely dim view of all this and wonders, perhaps with some reason, if the law, as suggested by Dickens, really is an ass. This wonderment stems from the fact that it under the circumstances may possibly be required to pay Joseph Breaux the sum of $869.58, at a time when Joseph Breaux and his wife admittedly owe it a sum in excess of $9,000, and are unable to pay the same or any part thereof! This, to the plaintiff seems fundamentally unfair. Let us see.

We shall first concern ourselves with the propriety of the trial court's finding that 70% of Joseph Breaux's claim for unpaid wages was not subject to being set-off against the indebtedness of the defendants to the plaintiff. This issue was clearly before the trial court, as the plaintiff was vigorously contending that any and all indebtedness on its part to Joseph Breaux should be set-off in its entirety against the admitted indebtedness of the defendants to the plaintiff. On the other hand, Joseph Breaux contended that 70% of the wages due were by statute exempt from levy and by the same token were also exempt from being thus set-off against his indebtedness to the plaintiff. In the agreed statement of facts it was stipulated that Joseph Breaux was

the head of a family consisting of his wife and six minor children and that he was otherwise within the requirements of C.R.S. 1963, 77-2-4.

Our attention has not been directed to any Colorado authority which is decisive of the question as to whether property which by statute is exempt from levy under execution, attachment or garnishment is also exempt from the law of set-off, the language in *Rutter v. Shumway,* 16 Colo. 95, 26 Pac. 321, relating to this particular subject being dictum. The decided weight of authority, however, from other jurisdictions is that such exempt property is *not* subject to being set-off against any indebtedness on the part of the employe to his employer. In 47 Am. Jur. pp. 726-727 the general rule is said to be as follows:

"§23. Actions on Exempt Claims or for Exempt Property. — While there is contrary authority, the majority rule is that in any action the subject of which is exempt the defendant will not be permitted to defeat the exemption by setting up a counterclaim or set-off and this is true notwithstanding there is no express provision protecting exempt property from the right of counterclaim or set-off. This interpretation given to the exemption statutes is not in all cases the one which a literal following of its provisions would seem to require, but force and effect are sought to be given to the obvious legislative intent. The whole spirit of these acts is such that it was intended to protect the exempt property from all manner of coercive process of the law, and not merely to protect the earnings of the debtor and other exempt property from seizure by means of the processes technically known as attachment, execution, or garnishment, but to preserve them for the benefit of his family against any appropriation for the payment of his debts not authorized by law to which he does not consent. To allow a setoff would in most cases result in a palpable evasion of the law.

"The general rule has been applied in actions to re-

cover for the wrongful taking or detaining of exempt property, to recover for wrongful conversion of exempt property, and to recover the sale price of such property. *Likewise in an action for exempt wages due from the defendant, he cannot counterclaim a debt due from the plaintiff to him,* although the counterclaim comes within the letter of the statute. . . . ." (Emphasis supplied.)

In like vein in 22 Am. Jur. p. 108 appears the following:

"Creditors very often attempt to defeat a claim of exemption by interposing a setoff or counterclaim existing in their favor and against the debtor. Most frequently this is done in actions by the debtor for wages or compensation. The general rule seems to be that in such case the right to exemption will be respected and protected without regard to the right of offset and that the creditor will not be permitted to defeat the exemption by setting up a demand against the debtor's claim, even though such demand would otherwise be good as a counterclaim or setoff."

Finally, for a collation of cases bearing on this point, see 106 A.L.R. pp. 1064-1084.

Accordingly, we conclude that the trial court did not err in refusing to set-off against the defendants' admitted indebtedness to the plaintiff 70% of Joseph Breaux's claim against plaintiff for unpaid wages.

We shall next address ourselves to the propriety of the trial court's further ruling that Joseph Breaux's interest in the plaintiff's retirement plan was, in the words of the trial court, "by contract of the parties not subject to attachment and may not be withheld by plaintiff as a set-off." We have examined the retirement plan of the plaintiff and find no provision contained therein which in our view would justify the aforementioned conclusion of the trial court.

Nor in our view would Breaux be entitled to have 70% of the monies due him under the retirement plan upon his termination of service declared to be exempt

from set-off on the premise that such is also exempt from levy by virtue of C.R.S. 1963, 77-2-4. Joseph Breaux terminated his employment and thus never did qualify for any "pension or retirement benefits." Upon such termination of employment, the erstwhile employe under the terms of the plan is only entitled to a return of his contributions to the plan. The monies due him from the voluntary retirement plan under these circumstances cannot be considered "earnings." Hence, as regards the $437.04 due him from the retirement plan upon the termination of his employment, Joseph Breaux does not bring himself within the provisions of C.R.S. 1963, 77-2-4. This particular property, then, not being property "exempt" from levy, it is therefore subject to being set-off against the indebtedness of the defendants to plaintiff.

The judgment entered for plaintiff on its claim against the defendants in the amount of $9,166.99 is modified and reduced to a judgment in the amount of $8,729.95, and the judgment as thus modified and reduced is affirmed.

Insofar as the judgment on Joseph Breaux's counterclaim is concerned, this judgment is also modified and reduced from a judgment in the amount of $869.58 to a judgment in the amount of $432.54, and this judgment as thus modified and reduced is affirmed.

MR. CHIEF JUSTICE SUTTON and MR. JUSTICE SCHAUER concur.