[S.F. No. 23014. In Bank. Apr. 26, 1974.]

JEAN KRUGER, Plaintiff and Appellant, v.
WELLS FARGO BANK, Defendant and Respondent.

**COUNSEL**

Wong, Siedman & Lee and Jack Siedman for Plaintiff and Appellant.

Cecily Nyomarkay, Richard A. Weisz, Michael B. Weisz and Thomas W. Pulliam, Jr., as Amici Curiae on behalf of Plaintiff and Appellant.

Brobeck, Phleger & Harrison, Moses Lasky and Kirtley M. Thiesmeyer for Defendant and Respondent.

## OPINION

**TOBRINER, J.**—In this case we hold that a bank's setoff of charge account debts against a depositor's checking account constitutes private action, not state action, and thus does not succumb to the requirements of procedural due process under the federal Constitution. We also hold that the reach of the due process clause of the state Constitution is insufficient to afford a remedy to depositors. We conclude, however, that a bank may not exercise its right of setoff against deposits which, derived from unemployment and disability benefits, are protected from the claims of creditors.

### 1. *Statement of facts.*

Plaintiff Jean Kruger maintained a checking account and a Master Charge contract with defendant Wells Fargo Bank. Payments for unemployment compensation and state disability benefits, which she deposited in her checking account, comprised her only source of income. On October 21, 1970, the bank deducted the $87.68 balance of her account and applied it to her Master Charge delinquency. She received no advance notice of its intention to debit her account, but subsequently the bank served her with a statement that it had exercised a banker's lien against her account. The bank thereafter refused to honor checks which she had written prior to the debiting of her account, but which the payee had not presented until after that event; aggravating the alleged injury, the bank then billed her $44 for service charges on the dishonored checks.

Plaintiff filed suit, asserting both an individual claim on her own behalf and a class claim on behalf of all depositors with defendant bank whose deposits, derived from governmental benefit payments, enjoyed exemption from attachment and execution under Code of Civil Procedure section 690.18, subdivision (a).[1] The bank demurred. The superior court sus-

---

[1]Section 690.18, subdivision (a), exempts from attachment or execution: "All money received by any person, a resident of the state, as a pension, or as an annuity or retirement or disability or death or other benefit, or as a return of contributions and interest thereon, from the United States government, or from the state, or any county, city, or city and county, or other political subdivision of the state, or any public trust, or public corporation, or from the governing body of any of them, or from any public board or boards, or from any retirement, disability, or annuity system established by any of them pursuant to statute, whether the same shall be in the actual possession of such pensioner or beneficiary, or deposited by him."

tained the demurrer, without leave to amend, on the ground that plaintiff's complaint did not state facts sufficient to constitute a cause of action.[2]

2. ██  *A bank's exercise of its right of setoff against a depositor's account does not constitute state action, and consequently need not conform to the standards of procedural due process required by the federal Constitution.*

As a preliminary matter, we note that, contrary to the contention of plaintiff, this case raises no issue of the constitutionality of Civil Code section 3054, the banker's lien act. That section provides that "A banker has a general lien, dependent on possession, upon all property in his hands belonging to a customer, for the balance due to him from such customer in the course of the business."

██  As the court in *Gonsalves* v. *Bank of America* (1940) 16 Cal.2d 169, 173 [105 P.2d 118] explains: "The banker's lien described in this statute is, properly speaking, a lien on the *securities* such as commercial paper deposited with the bank by the customer in the course of business. The so-called 'lien' of the bank on the depositor's *account* or funds on deposit is not technically a lien, for the bank is the owner of the funds and the debtor of the depositor, and the bank cannot have a lien on its own property. The right of the bank to charge the depositor's fund with his matured indebtedness is more correctly termed a right of setoff, based upon general principles of equity."[3] Thus despite the bank's misleading notice to Kruger that it was asserting a lien upon her account, which led her to frame a complaint seeking a judicial declaration respecting the con-

---

[2]In addition to sustaining a demurrer without leave to amend on the ground that plaintiff's complaint stated no cause of action, the superior court upheld grounds for demurrer asserting misjoinder of parties plaintiff, failure to state facts sufficient to entitle the plaintiff to injunctive or declaratory relief, and lack of subject matter jurisdiction. The court's ruling as to these matters does not include a denial of leave to amend; thus the court's judgment dismissing the action apparently rests solely on its ruling that the complaint did not state a cause of action. It is therefore unnecessary for us on this appeal to examine plaintiff's complaint to determine if it frames a proper class action, states grounds for declaratory and injunctive relief, and lies within the jurisdiction of the superior court. If we decide that the complaint does not state, and cannot be amended to state, a cause of action, such issues of pleading become moot; if we determine that plaintiff can state a cause of action, we must reverse the judgment dismissing her complaint. Upon return of her cause to the trial court, plaintiff may then amend to cure any defects in her pleading.

[3]"The relationship of bank and depositor is that of debtor and creditor, founded upon contract." (*Bank of Marin* v. *England* (1966) 385 U.S. 99, 101 [17 L.Ed.2d 197, 200, 87 S.Ct. 274].)

stitutionality of the banker's lien law,[4] the instant case does not in fact involve a banker's lien under section 3054, but arises from the bank's assertion of a right of setoff against a depositor's account.[5]

We turn to plaintiff's contention that defendant bank, in asserting a setoff against her account, unconstitutionally deprived her of the use of property without due process of law. We recognize that in practice a bank's assertion of its right of setoff is often inequitable. Depositors have come to view their checking account balance not as an ordinary debt, but as the modern equivalent of cash on hand to meet the expenses of daily living. When the bank exercises a setoff against a checking account, the devastating effect on the depositor is exactly the same as garnishment of the account. Deprived of the use of the fund on which he relied to pay his daily bills, he may be forced to default on other obligations and may lack the ability to purchase the necessities of life. (See *Randone* v. *Appellate Department* (1971) 5 Cal.3d 536, 559-560 [96 Cal.Rptr. 709, 488 P.2d 13].) When the bank subsequently refuses to pay checks drawn before the date of setoff, it simultaneously destroys the depositor's credit standing, and works an unfair advantage vis-à-vis the other creditors who accepted those checks. If it should later develop that the bank's exercise of the setoff was improper, it is unlikely that all the damage can be redressed.

But private action, however hurtful, is not unconstitutional. (*Civil Rights Cases* (1883) 109 U.S. 3, 11 [27 L.Ed. 835, 839, 3 S.Ct. 18].)[6]

---

[4] Plaintiff's complaint alleges that defendant exercised a banker's lien against her account, that the bank acted pursuant to the statutory authority of Civil Code section 3054, and that this statute is unconstitutional. The factual allegations of the complaint, however, demonstrate that the bank in fact asserted a setoff against her account. Any uncertainty in the complaint arising from her reference to the banker's lien can obviously be cured by amendment.

[5] As stated in *Engleman* v. *Bank of America* (1950) 98 Cal.App.2d 327, 330-331 [219 P.2d 868]: "The right of offset exists in favor of a bank with which a customer makes a general deposit but . . . [not] one which was to be used for a specific purpose. . . . A bank impliedly binds itself, by accepting a special deposit, not to set off against such deposit a debt due it from the depositor." Such special deposits typically are monies deposited to pay or secure a specific debt of the depositor (see *Engleman* v. *Bank of America, supra,* 98 Cal.App.2d at p. 331 and cases there cited); a checking account is considered a general deposit. (See *Arnold* v. *San Ramon Valley Bank* (1921) 184 Cal. 632, 635-636 [194 P. 1012, 13 A.L.R. 320].)

[6] Numerous articles discuss the jurisprudential problems of defining the limits of state action: Abernathy, *Expansion of the State Action Concept Under the Fourteenth Amendment* (1958) 43 Cornell L.Q. 375; Black, *Forward: "State Action," Equal Protection and California's Proposition 14* (1967) 81 Harv.L.Rev. 69; Burke & Reber, *State Action, Congressional Power and Creditors' Rights: An Essay on the Fourteenth Amendment* (1972) 46 So.Cal.L.Rev. 1003; (1973) 47 So.Cal.L.Rev. 1 (hereafter cited as "Burke & Reber"); Hekin, *Shelley* v. *Kraemer: Notes for a*

The Fourteenth Amendment provides that *"No state* shall . . . deprive any person of life, liberty, or property, without due process of law." (Italics added.) ■ As stated in *Shelley* v. *Kramer* (1948) 334 U.S. 1, 13 [92 L.Ed. 1161, 1180, 68 S.Ct. 836, 3 A.L.R.2d 441], the only action inhibited by the due process clause is "such action as may fairly be said to be that of the States. [The Fourteenth] Amendment erects no shield against merely private conduct, however discriminatory or wrongful." Thus plaintiff, to prevail in her contention that the bankers' setoff violates constitutional strictures, must show a level of significant state involvement in the act of the bank sufficient to characterize the setoff as "state action." (*Moose Lodge No. 107* v. *Irvis* (1972) 407 U.S. 163, 173 [32 L.Ed.2d 627, 637-638, 92 S.Ct. 1965]; *Reitman* v. *Mulkey* (1967) 387 U.S. 369, 380 [18 L.Ed.2d 830, 837-838, 87 S.Ct. 1627].)

In the only reported decisions to consider the constitutionality of the bankers' setoff, the courts have concluded that the act of a bank in setting off a depositor's debt against his account is private, not state, action and hence not subject to constitutional requirements of due process. (*Bichel Optical Lab., Inc.* v. *Marquette Nat. Bk. of Mpls.* (8th Cir. 1973) 487 F.2d 906; *Jojola* v. *Wells Fargo Bank* (N.D.Cal. 1973) No. C-71 900 SAW; *Fletcher* v. *Rhode Island Hospital Trust Nat. Bank* (1st Cir. 1974) 496 F.2d 927.[7] ■ Agreeing with the reasoning of those decisions, we shall explain that the procedure of setoff, in contrast to other prejudgment remedies, requires no act of assistance from state officials. Although former Code of Civil Procedure section 440 authorized setoff, that statute merely codified the right of setoff as it existed in courts of equity; it did not compel or encourage the exercise of this right. Judicial and legislative recognition of this private right of setoff does not mould the exercise of that right into a form of state action. Finally, we shall explain that government regulation of the banking industry does not render every act of a bank the act of the state; in the instant case, the bank did not proceed pursuant to government command but merely exercised a right available to all private contracting parties.

---

*Revised Opinion* (1962) 110 U.Pa.L.Rev. 473; Horowitz, *The Misleading Search for "State Action": Under the Fourteenth Amendment* (1957) 30 So.Cal.L.Rev. 208; Lewis, *The Meaning of State Action* (1960) 60 Colum.L.Rev. 1083; Van Alstyne & Karst, *State Action* (1961) 14 Stan.L.Rev. 3; Williams, *The Twilight of State Action* (1963) 41 Texas L.Rev. 347.

[7]For discussion of the constitutionality of the bankers' setoff, see Burke & Reber, 47 So.Cal.L.Rev. 1, 33-43; Clark & Landers, *Sniadach, Fuentes and Beyond: The Creditor Meets the Constitution* (1973) 59 Va.L.Rev. 355, 400-402; *Stillwater, The California Bankers' Lien Law: A Reappraisal of a Creditor's Remedy in a New Economic Context* (1972) 27 Bus. Law. 777; Note, *Banking Setoff: A Study in Commercial Obsolescence* (1972) 23 Hastings L.J. 1585, 1602-1610.

The present case emanates from the emerging line of decisions extending procedural due process protections to debtors whose property is taken pursuant to statutes establishing summary creditor remedies. Within the past five years courts have struck down or limited a host of summary prejudgment remedies: wage garnishment (*Sniadach* v. *Family Finance Corp.* (1969) 395 U.S. 337 [23 L.Ed.2d 349, 89 S.Ct. 1820]); claim and delivery (*Blair* v. *Pitchess* (1971) 5 Cal.3d 258 [96 Cal.Rptr. 42, 486 P.2d 1242, 45 A.L.R.3d 1206]); garnishment of bank accounts (*Randone* v. *Appellate Department* (1971) 5 Cal.3d 536 [96 Cal.Rptr. 709, 488 P.2d 13]); replevin (*Fuentes* v. *Shevin* (1972) 407 U.S. 67 [32 L.Ed.2d 556, 92 S.Ct. 1983]); unlawful detainer (*Mihans* v. *Municipal Court* (1970) 7 Cal.App.3d 479 [87 Cal.Rptr. 17]); the innkeeper's lien (*Klim* v. *Jones* (N.D.Cal. 1970) 315 F.Supp. 109); the landlord's lien (*Hall* v. *Garson* (5th Cir. 1970) 430 F.2d 430); and garnishment of accounts receivable (*Jones Press, Inc.* v. *Motor Travel Service, Inc.* (1970) 286 Minn. 205 [176 N.W.2d 87]). Almost all of these remedies required some ministerial act of a court clerk, a sheriff, or some other state official. Such official acts, undertaken pursuant to authority conferred by statute, so obviously constitute state action that the courts in these cases have proceeded directly to adjudicate the due process issue without discussion of the requirement of state action.

The present case, in contrast, involves the act of a private party bereft of any action of state officials. Plaintiff seeks, therefore, to discover some other foundation on which to erect a structure of state action. The many arguments she advances can be organized into two contentions: (1) that since the right of setoff derives from state statutory or court-made law, it should be deemed state action; and (2) that even if setoff by an ordinary creditor is not state action, the banking industry is so highly regulated, and performs so important a function, that the act of a bank should be treated as the act of the state itself. We discuss each contention in turn; we initially address ourselves to the proposition that since state statutes or state court decisions necessarily generated the right to setoff it must be considered state action.

As we pointed out earlier, the bank's action in the present case finds authorization not in the banker's lien law (Civ. Code, § 3054) but in the equitable principle of setoff.[8] In 1872 this principle was partially codified in Code of Civil Procedure section 440. That statute, as of the date of setoff in the instant case, asserted that "When cross-demands have existed

---

[8]For an excellent review of the history of the doctrine of setoff, see Comment, *Automatic Extinction of Cross-Demands:* Compensatio *from Rome to California* (1965) 53 Cal.L.Rev. 224. (Hereinafter cited as Comment.)

between persons under such circumstances that, if one had brought an action against the other, a counterclaim could have been set up, the two demands shall be deemed compensated, so far as they equal each other, and neither can be deprived of the benefit thereof by the assignment or death of the other."[9] Plaintiff contends that the authority conferred by this statute transforms the private action of the bank into state action.

Those cases predicating state action upon the impact of a statute on private behavior fall generally into three categories.[10] The first, which is not apposite here, consists of cases which adjudicated statutes that *compelled* private action.[11] The second category encompasses those statutes which, while not compelling private action, endorse and *encourage* that action as state policy. The third group comprises the decisions in which the statutes create a private right of summary seizure.

The leading case in the second group, allegedly espousing the "encouragement" theory, *Reitman* v. *Mulkey* (1967) 387 U.S. 369 [18 L.Ed.2d 830, 87 S.Ct. 1627], struck down a California initiative that both replaced all laws banning racial discrimination in housing and also established a state constitutional right to discriminate. Plaintiff would interpret *Reitman* broadly to hold that a legislative enactment that authorizes private acts renders those acts a form of state action, arguing by analogy that the legislative enactment of section 440 renders setoff a form of state action.

The essence of the *Reitman* decision is that an action of the state which is not merely permissive of discrimination but a significant encouragement of it, and a consequent involvement of the state in it, does constitute state action. The Supreme Court of the United States stated that the California Supreme Court had found that the design of Proposition 14 was to overturn previous laws that banned discrimination and " 'to forestall future

---

[9]Effective July 1, 1972, section 440 was repealed and replaced by section 431.70. The new section states that "Where cross-demands for money have existed between persons at any point in time when neither demand was barred by the statute of limitations, and an action is thereafter commenced by one such person, the other person may assert in his answer the defense of payment in that the two demands are compensated so far as they equal each other . . . ." The difference in wording between section 431.70 and former section 440 is not material to the case at hand.

[10]The analysis of the various forms of state action in this discussion follows that in the outstanding opinion of Judge Weigel in *Jojola* v. *Wells Fargo Bank* (N.D.Cal. 1973).

[11]See *Robinson* v. *Florida* (1964) 378 U.S. 153 [12 L.Ed.2d 771, 84 S.Ct. 1693] [segregation of private facilities required by state law]; *Peterson* v. *Greenville* (1963) 373 U.S. 244 [10 L.Ed.2d 323, 83 S.Ct. 1119] [same]; cf. *Moose Lodge No. 107* v. *Irvis* (1972) 407 U.S. 163 [32 L.Ed.2d 627, 92 S.Ct. 1965] [bylaws of private club excluded blacks; state regulations compelled all private clubs to enforce their bylaws].

state action that might circumscribe this right.' " (387 U.S. at p. 374 [18 L.Ed.2d at p. 834].) Our court held that the proposition achieved this aim, and formulated a right, sanctioned by the state, to engage in private discrimination. Not only did Proposition 14 erect a state-supported right to discriminate but the enactment itself stripped the Legislature or any agency of the state of the power, forever thereafter, of taking any steps whatsoever to affect or forestall the "right" of the private seller and renter to discriminate. Hence discrimination was enshrined in the Constitution of the state in perpetuity. (See Burke & Reber (1972) 46 So.Cal.L.Rev. 1003, 1078-1082.)

Moreover, our court rendered a finding, relied upon by the United States Supreme Court, that the initiative *would* in fact actively encourage discrimination. (See *Mulkey* v. *Reitman* (1966) 64 Cal.2d 529, 540 [50 Cal.Rptr. 881, 413 P.2d 825]; *Reitman* v. *Mulkey* (1967) 387 U.S. 369, 376 [18 L.Ed.2d 830, 835, 87 S.Ct. 1627].) Consequently *Reitman* was interpreted, in subsequent cases, as declaring the proposition that permissive legislation transforms private conduct into state action if the purpose and effect of the legislation is to approve and encourage that private action as designed in Proposition 14. (See discussion of *Reitman* in *Jojola* v. *Wells Fargo Bank* (N.D.Cal. 1973); *Kirksey* v. *Theilig* (D.Colo. 1972) 351 F.Supp. 727, 731.)

Former section 440, on the other hand, took a neutral stance.[12] Recognizing the established principle in equity that either party to a transaction involving mutual debts and credits can strike a balance, holding himself owing or entitled only to the net difference, the statute merely establishes a procedure for asserting such a setoff under the code pleading system of California. ■ Since it does not alter the substantive law of setoff,[13] we see no basis for finding that section 440, or its successor section 431.70 was intended to, or did, *encourage* banks or other creditors to exercise their right of setoff without notice to the debtor. (*Jojola* v. *Wells Fargo Bank* (N.D.Cal. 1973).)

Finally the third category of cases that find state action are those based upon statutes, rather than decisions at common law or private contracts, that *create* the private right of summary seizure. (See *Klim* v. *Jones* (N.D. Cal. 1970) 315 F.Supp. 109, 114 [innkeeper's lien]; *Hall* v. *Garson* (5th

---

[12]The depositor, as well as the bank, may exercise a right of setoff. (*In re Bank of San Pedro* (1938) 11 Cal.2d 313, 316 [79 P.2d 1057].)

[13]Arguably former Code of Civil Procedure section 440 went beyond the prior law in providing for *automatic* setoff of claims (see Comment, 53 Cal.L.Rev. 224, 252-266), but defendant bank does not rely on this feature of the statute.

Cir. 1970) 430 F.2d 430, 439 [landlord's lien].) ■ But as was pointed out by Judge Weigel in *Jojola* v. *Wells Fargo Bank* (N.D.Cal. 1973), "The right of setoff, while recognized by the statute, was not created by it. The right is grounded in general principals of equity. 'In equity, a setoff . . . depends, not upon the Statutes of Set-off, but upon the equitable jurisdiction of the Court over its suitors.' Hobbs v. Duff, 23 Cal. 596, 629 (1863). . . . Thus, if Section 440 never had been enacted, the Bank would still have had the right to balance off mutual obligations." ■ A statute which neither adds new rights nor permits private conduct prohibited under the common law, does not raise the conduct to the level of state action . (*Jojola* v. *Wells Fargo Bank, supra.*)[14]

As a rejoinder to the observation that section 440 creates no rights plaintiff offers the sweeping suggestion that all private action undertaken pursuant to the decisions of the common law constitutes state action; that the common law is simply the law as rendered by court decision; since *courts* are themselves agents of the state, judicial enforcement of common law principles constitutes state action. This rejoinder rests upon *Shelley* v. *Kraemer* (1948) 334 U.S. 1 [92 L.Ed. 1161, 68 S.Ct. 836, 3 A.L.R.2d 441], which held that judicial enforcement of racial covenants constituted unconstitutional state action. Carrying that decision to a logical extreme, plaintiff argues that whenever a court invokes common law principles of tort or contract, private tortious or contractual conduct magically changes into state conduct.

The United States Supreme Court has declined to carry the principle of state action to such extremes.[15] For example, in *Evans* v. *Abney* (1970) 396 U.S. 435 [24 L.Ed.2d 634, 90 S.Ct. 628], the Georgia Supreme Court applied the common law doctrine that a testator, in establishing a trust, may circumscribe the beneficiaries of that trust on racial or otherwise

---

[14]A number of cases have considered the issue of state action in connection with Uniform Commercial Code article 9, section 503, which permits a secured creditor peaceably to take possession of the collateral without resort to the judicial process. The weight of authority upholds article 9, section 503 on the ground that the codification of a pre-existing common law and contractual remedy is not sufficient state action to bring into play the Fourteenth Amendment. (See *Adams* v. *Southern Cal. First. Nat. Bank* (9th Cir. 1973) 492 F.2d 324; cases cited in Burke & Reber (1973) 47 So.Cal.L.Rev. 1, 8 at fn. 490.)

[15]For discussion of *Shelley* v. *Kraemer,* and the Supreme Court's refusal to extend the principles of that case, see generally Burke & Reber (1972) 46 So.Cal.L.Rev. 1003, 1086-1091; Henkin, *Shelley v. Kraemer: Notes for a Revised Opinion* (1962) 110 U.Pa.L.Rev. 473; Pollak, *Racial Discrimination and Judicial Integrity: A Reply to Professor Wechsler* (1959) 108 U.Pa.L.Rev. 1; Silard, *A Constitutional Forecast: Demise of the "State Action" Limit on the Equal Protection Guarantee* (1966) 66 Colum.L.Rev. 855.

arbitrary lines. All of the justices of the United States Supreme Court appear to agree that state recognition of this doctrine did not convert the testator's racial decision into state action; they disagreed as to whether use of this doctrine to annul the bequest constituted a form of state affirmative enforcement of private discrimination prohibited under *Shelley*.[16] By analogy, in the present case, a court order affirmatively requiring an unwilling party to exercise a right of setoff would be a form of state action, but mere judicial recognition of the equitable principles of setoff would not present sufficient state involvement to bring the bank's private act under the Fourteenth Amendment.

■ Our review of the cases discussing the constitutionality of prejudgment remedies further confirms our conclusion that the courts have not accepted plaintiff's claim that judicial acceptance of common law remedies constitutes state action. Of those many decisions declaring particular creditors' remedies unconstitutional, none found their rulings upon such a theory; those decisions that hold that common law self-help remedies lie beyond the scope of the Fourteenth Amendment likewise reject, either expressly or by implication, plaintiff's contention.[17]

We turn therefore to plaintiff's second major contention—that the exercise of the right of setoff by a *bank* constitutes unconstitutional state action. Banking corporations owe their legal existence to state law, derive their right to practice banking from government license, are subject to extensive state and national regulation, fulfill important economic func-

---

[16]Georgia Senator Augustus Bacon willed a park to the City of Macon for the use of white persons only. The city, however, opened the park to blacks. In the first case, *Evans* v. *Newton* (1966) 382 U.S. 296 [15 L.Ed.2d 373, 86 S.Ct. 486], the court held that an order of a state court removing the city as trustee, and appointing new trustees who would operate a segregated park was unconstitutional state action. The state court then held that since the purpose of the trust—operation of a park for white persons only—had become impossible of fulfillment, the trust was terminated and the land reverted to the Senator's heirs. In the second case, *Evans* v. *Abney* (1970) 396 U.S. 435 [24 L.Ed.2d 634, 90 S.Ct. 628], the Supreme Court affirmed this state ruling, holding that the Georgia courts did no more than apply neutral and well-settled principles of interpretation of wills. The court distinguished *Shelley* v. *Kraemer* (*supra*, 334 U.S. 1) as involving affirmative enforcement of private discrimination. (396 U.S. at p. 445 [24 L.Ed.2d at p. 644].) The dissenting opinion of Justice Brennan agreed that *Shelley* v. *Kraemer* did not transform private testamentary acts into state conduct, but argued that *Shelley* did prohibit the state from preventing the city from operating an integrated park by enforcing a privately devised racial restriction. (396 U.S. at p. 456 [24 L.Ed.2d at p. 650].) (See *The Supreme Court, 1969 Term* (1970) 84 Harv.L.Rev. 30, 54-60.)

[17]See *Bichel Optical Lab., Inc.* v. *Marquette Nat. Bk. of Mpls.* (8th Cir. 1973) 487 F.2d 906; *Jojola* v. *Wells Fargo Bank* (N.D.Cal. 1973); cases cited in Burke & Reber (1973) 47 So.Cal.L.Rev. 1, 8 at footnote 490.

tions often performed by government agencies, and exert great influence upon the economic health of the nation.[18] ■ They are among those businesses affected with a public interest (See *Hiroshima* v. *Bank of Italy* (1926) 78 Cal.App. 362, 377 [248 P. 947]; see generally *Tunkl* v. *Regents of University of California* (1963) 60 Cal.2d 92, 97-98 [32 Cal.Rptr. 33, 383 P.2d 441, 6 A.L.R.3d 693].)

As concepts of state action evolve to correspond more closely to economic reality, we may arrive at judicial recognition that such institutions and enterprises should be considered agents of the state, so that those who deal with them will receive the protection not only of decisional law but of constitutional due process. (See *Reitman* v. *Mulkey* (1967) 387 U.S. 369, 381-387 [18 L.Ed.2d 830, 838-841, 87 S.Ct. 1627] (Douglas, J., concurring); *Lombard* v. *Louisiana* (1963) 373 U.S. 267, 275-278 [10 L.Ed.2d 338, 343-345, 83 S.Ct. 1122] (Douglas, J., concurring); Miller, *The Constitutional Law of the "Security State"* (1958) 10 Stan.L.Rev. 632; Tobriner & Grodin, *The Individual and the Public Service Enterprise in the New Industrial State* (1967) 55 Cal.L.Rev. 1247, 1253 and fn. 29.) As Justice Cardozo wrote, "The great generalities of the Constitution have a content and a significance that vary from age to age." (Cardozo, The Nature of the Judicial Process (1921) p. 17.)

We must, however, apply to the facts of this case the current law as announced by the decisions. The law of state action will evolve, as it has, by measured steps, with one appropriate decision building upon another. A decision at this time subjecting banks and other public service enterprises to the requirements of constitutional due process would be unwarranted in the light of present authority.

The conclusion that the bank is not a state instrumentality involved in the transaction of setoff finds its final confirmation in the contrast between the role of the bank here and the role of the restaurant in *Burton* v. *Wilmington Pkg. Auth.* (1961) 365 U.S. 715 [6 L.Ed.2d 45, 81 S.Ct. 856]. The court there held that a private restaurant, which leased its facility from a state parking authority, could not constitutionally refuse to serve blacks. The court's opinion comprehensively reviewed the relationship between the lessee and the parking authority, and concluded that the state "so far insinuated itself into a position of interdependence . . . that it must be recognized as a joint participant in the challenged activity." (365 U.S. at p. 725 [6 L.Ed.2d at p. 52].)

---

[18]See *Franklin Nat. Bank* v. *New York* (1954) 347 U.S. 373, 374-375 [98 L.Ed. 767, 772-773, 74 S.Ct. 550]; 7A Michie, Banks and Banking (1973) pp. 2-3.

The present case, unlike *Burton,* involves the private decision of a private business operating on private property.[19] No state or federal regulation compels the bank to assert its right of setoff. "There is no evidence that Section 440 was a regulatory enactment pertaining to the banking industry, nor that banks exercise the power of setoff in furtherance of some state policy. The Bank is not publicly financed. The fact that it is generally regulated under federal law is insufficient to show state involvement in the particular action of setoff." (*Jojola* v. *Wells Fargo Bank* (N.D.Cal. 1973); accord, *Bichel Optical Lab., Inc.* v. *Marquette Nat. Bk. of Mpls.* (8th Cir. 1973) 487 F.2d 906, 907.) ██ We conclude that under the Fourteenth Amendment a bank retains the same right of setoff as does any private creditor.

3. ██ *Since the banker's setoff does not involve state action, it is not subject to the requirements of the due process clause of the California Constitution.*

Amicus suggests that the bank's setoff violates article I, section 13, of the *California* Constitution, which states in part that "No person shall . . . be deprived of life, liberty or property without due process of law." Those few cases which have discussed the California due process clause have assumed its prohibition is co-extensive with the due process clause of the Fourteenth Amendment.[20] Amicus challenges this assumption and argues that article I, section 13, unlike its counterpart in the Fourteenth Amendment, imposes no prerequisite of state action.

Article I, section 13, was adopted in 1849 and reenacted in 1879. It follows the exact language of the due process clause of the Fifth Amendment to the federal Constitution. From *Barron* v. *Baltimore* (1833) 32 U.S. (7 Pet.) 243 [8 L.Ed. 672] to the present, courts have uniformly interpreted that clause of the Fifth Amendment to limit only the actions of the federal government. Thus these decisions afford no ground for a conclusion that the drafters of article I, section 13, of our state Constitution intended by that enactment to impose a different limitation on the power

[19]See *Moose Lodge No. 107* v. *Irvis* (1972) 407 U.S. 163, 175 [32 L.Ed.2d 627, 638-639, 92 S.Ct. 1965].

[20]*Gray* v. *Hall* (1928) 203 Cal. 306, 318 [265 P. 246]; *Gray* v. *Whitmore* (1971) 17 Cal.App.3d 1, 20 [94 Cal.Rptr. 904]; *Abstract Investment Co* v. *Hutchinson* (1962) 204 Cal.App.2d 242, 245 [22 Cal.Rptr. 309]; *Redevelopment Agency* v. *Hayes* (1954) 122 Cal.App.2d 777, 806 [266 P.2d 105]; *Manford* v. *Singh* (1919) 40 Cal.App. 700 [181 P. 844].

of state government.[21] ▉ To construe article I, section 13, to apply to private action would involve a judicial innovation which, as of this date, is without precedent.

4. ▉ *The bank may not exercise its right of setoff against deposits protected from creditors under Code of Civil Procedure section 690.175.*

Plaintiff pleads that all monies deposited in her bank account came from state disability insurance and unemployment compensation. Funds derived from such sources are exempt from attachment and execution (Code Civ. Proc., § 690.175; Unemp. Ins. Code, § 1342.)[22] ▉ Funds exempt by statute retain that exemption when deposited in a bank account.[23] Thus neither defendant bank, nor any other creditor, could seize plaintiff's deposits by writ of attachment or execution. The issue in the present case is whether defendant bank can take such deposits by exercise of a banker's setoff.

▉ We shall point out that the creditor's right to setoff is not absolute, but may be restricted by judicial limitations imposed to uphold a state policy of protecting the rights of the debtor. As we shall explain, the exercise of a banker's setoff against unemployment and disability benefits diverts money intended by the state to pay the current living expenses of the unemployed and the disabled into payment of past debts accumulated by the bank, leaving the intended beneficiaries no alternative but to seek additional relief from the state. Thus to permit bankers' setoffs against unemployment and disability benefits will frustrate the Legislature's objectives in providing such benefits and in protecting them from seizure by creditors. We conclude, therefore, that deposits derived from unemployment and disability benefits are immune from setoff.

---

[21]We by no means imply that the California due process clause must in all instances be interpreted identically with the due process clause of the Fifth Amendment. (See generally Falk, *The State Constitution: A More Than "Adequate" Non-federal Ground* (1973) 61 Cal.L.Rev. 273, 282-286.)

[22]Code of Civil Procedure section 690.175 states among the property exempt from attachment or execution under Code of Civil Procedure section 690 are: "State unemployment compensation benefits . . . or unemployment compensation disability benefits . . . . Such benefits or payments, prior to actual payment, shall be exempt without filing a claim of exemption, as provided in Section 690.50."

Unemployment Insurance Code section 1342 states that: ". . . Benefits under this code . . . are *not subject to assignment, release, or commutation, and are exempt from attachment and execution* pursuant to Sections 690.175 and 690.18 of the Code of Civil Procedure. . . ."

[23]*Holmes* v. *Marshall* (1905) 145 Cal. 777, 782-783 [79 P. 534]; *Bowman* v. *Wilkinson* (1957) 153 Cal.App.2d 391, 395-396 [314 P.2d 574]; *Hing* v. *Lee* (1918) 37 Cal.App. 313, 317 [174 P. 356]; see *Porter* v. *Aetna Casualty Co.* (1962) 370 U.S. 159, 162 [8 L.Ed.2d 407, 410, 82 S.Ct. 1231]; Annot., 67 A.L.R. 1203.

Before discussing the specific state policies underlying exemption of unemployment and disability benefits, we must first decide whether the courts can, and should, employ such policies to limit a creditor's right to setoff. The defendant points out that the banker's setoff is not an attachment or execution, and thus does not contravene the specific prohibitions of the exemption statutes; it then leaps to the conclusion that it may exercise a setoff against exempt deposits. This conclusion rests on the implicit but mistaken assumption that a creditor's right of setoff is absolute except when explicitly limited by statute. Rejecting that assumption, we shall demonstrate that under the law of California, and a majority of other jurisdiction, the courts in certain circumstances have limited the right of setoff in order to protect the rights of the debtor.

The California case most directly on point is the venerable decision of *Beckman* v. *Manlove* (1861) 18 Cal. 388. In that case, after one Williams obtained a judgment against defendant, the sheriff under writ of execution seized property of defendant that was exempt from execution. Defendant sued the sheriff for the value of the property, and the sheriff, obtaining an assignment of Williams' judgment against defendant, asserted that judgment as a setoff. Although no statute precluded the sheriff's claim of setoff, the court held that he could not use a setoff to retain possession of exempt property, observing that "A different doctrine would operate a practical repeal of the exemption laws." (18 Cal. at p. 389.)[24]

---

[24]Many other California cases have limited the right of setoff in order to carry out state policies protecting the interest of the debtor. *McKean* v. *German-American Savings Bank* (1897) 118 Cal. 334 [50 P. 656], held that the one-action rule of Code of Civil Procedure section 726 bars a mortgagee's assertion of a secured debt to setoff an unsecured debt. In *Roberts* v. *Spires* (1925) 195 Cal. 267 [232 P. 708, 37 A.L.R. 763], when the owner of a building under construction attempted to set off against the contract price her claim for damages owing by the general contractor, the court rejected the setoff, stating that "The unpaid balance of the contract price constitutes a fund which is set apart for the satisfaction of lien claimants." (195 Cal. at pp. 270-271.) In *Keck* v. *Keck* (1933) 219 Cal. 316 [26 P.2d 300], the court held that a husband could not set off his wife's debt to him against an award of alimony because "alimony . . . cannot be garnished or appropriated to payment of the wife's debts contracted prior to the decree granting the alimony, either where her creditor is a third party or her divorced husband." (219 Cal. at p. 320.) *Avila* v. *Leonardo* (1942) 53 Cal.App.2d 602 [128 P.2d 43] held that child support payments are not subject to setoff. *Williams* v. *Williams* (1970) 8 Cal.App.3d 636 [87 Cal.Rptr. 754], reiterated that both alimony and child support are immune. Setoff cannot be asserted to defeat the state's claim for taxes (*Berryessa Cattle Co.* v. *Sunset Pacific Oil Co.* (9th Cir. 1937) 87 F.2d 972, 974), nor an injured employee's claim for workmen's compensation benefits (see, e.g., *Linder* v. *McBride* (1920) 7 I.A.C. 144). Four years ago, in *Crooks* v. *State Bar* (1970) 3 Cal.3d 346, 358 [90 Cal.Rptr. 600, 475 P.2d 872], we ruled that an attorney cannot setoff fees due him against trust funds owed to his client.

Decisions of other states go further and proclaim a general principle that a creditor cannot assert a setoff against exempt property. The Colorado Supreme Court, in holding that an employer cannot set off the employee's obligation on promissory notes against exempt wages due him, summarized the state of the law: " 'While there is contrary authority, the majority rule is that in any action the subject of which is exempt the defendant will not be permitted to defeat the exemption by setting up a counterclaim or setoff and this is true notwithstanding there is no express provision protecting exempt property from the right of counterclaim or setoff. This interpretation given to the exemption statutes is not in all cases the one which a literal following of its provisions would seem to require, but force and effect are sought to be given to the obvious legislative intent. The whole spirit of these acts is such that it was intended to protect the exempt property from all manner of coercive process of the law, and not merely . . . from seizure by means of the processes technically known as attachment, execution, or garnishment, but to preserve them for the benefit of his family against any appropriation for the payment of his debts not authorized by law to which he does not consent. To allow a setoff would in most cases result in a palpable evasion of the law. [¶] The general rule seems to be that in such case the right to exemption will be respected and protected without regard to the right of offset and that the creditor will not be permitted to defeat the exemption by setting up a demand against the debtor's claim, even though such demand would otherwise be good as a counterclaim or setoff.' " (*Finance Acceptance Company* v. *Breaux* (1966) 160 Colo. 510 [419 P.2d 955, 957-958], quoting 47 Am.Jur., pp. 726-727 and 22 Am.Jur., p. 108; see generally cases collected in Annot., 106 A.L.R. 1070.)[25]

Concluding that the bank's right of setoff may be limited by judicial

[25]Several California cases have permitted employers to set off debts owing them by employees against the employee's wages. (*McDaniel* v. *City etc. of San Francisco* (1968) 259 Cal.App.2d 356, 365 [66 Cal.Rptr. 384]; *Patterson* v. *Henderson T. & R. Co.* (1931) 112 Cal.App. 48 [296 P. 304]; see *Division of Labor Law Enforcement* v. *Barnes* (1962) 205 Cal.App.2d 337, 350 [23 Cal.Rptr. 55] [disapproved on other grounds in *White Lighting Co.* v. *Wolfson* (1968) 68 Cal.2d 336, 351 [66 Cal.Rptr. 697, 438 P.2d 345]]; *People* v. *Porter* (1930) 107 Cal.App. Supp. 782 [288 P. 22].) Although one half of wages is exempt from attachment and execution (see Code Civ. Proc., § 690.6), these cases do not discuss the relationship of the state policy providing for this exemption to the employer's assertion of setoff, nor recognize that the majority view in other jurisdictions is that exempt wages are not subject to setoff. (See *Finance Acceptance Company* v. *Breaux* (1966) 160 Colo. 510 [419 P.2d 955, 957].) We do not, therefore, regard these decisions as establishing a California rule permitting assertion of setoffs against exempt property.

decision, we turn to the specific issue raised by plaintiff's complaint on her own behalf whether state policy regarding unemployment and disability benefits renders such benefits immune from setoff.

The purpose of unemployment compensation was explained by the United States Supreme Court in *California Human Resources Dept.* v. *Java* (1971) 402 U.S. 121 [28 L.Ed.2d 666, 91 S.Ct. 1347]: "Unemployment benefits provide cash to a newly unemployed worker 'at a time when otherwise he would have nothing to spend'; serving to maintain the recipient at subsistence levels without the necessity of his turning to welfare or private charity. Further, providing for 'security during the period following unemployment' was thought to be a means of assisting a worker to find substantially equivalent employment. . . . Finally, Congress viewed unemployment insurance payments as a means of exerting an influence upon the stabilization of industry." (402 U.S. at pp. 131-132 [28 L.Ed.2d at p. 674].) State disability insurance serves a similar purpose, providing subsistence income to one whose unemployment stems from an illness or injury not covered under workmen's compensation. (See Unemp. Ins. Code, § 2601; *California Comp. Ins. Co.* v. *Ind. Acc. Com.* (1954) 128 Cal.App. 2d 797, 806 [276 P.2d 148, 277 P.2d 442] [disapproved on other grounds in *Pacific Employers Ins. Co.* v. *Industrial Acc. Com.* (1959) 52 Cal.2d 417, 422 [340 P.2d 622] ].)

The legislative objective in providing unemployment compensation and disability benefits—to furnish the unemployed worker and his family with a stream of income to defray the cost of their subsistence—would obviously fail if creditors could seize that income and apply it to past debts. Consequently the Legislature provided that unemployment and disability benefits cannot be subjected to attachment or execution. (Code Civ. Proc., § 690.175; Unemp. Ins. Code, § 1342.)

Although the banker's setoff differs from attachment and execution in that it does not require the aid of a state official, there is no relevant difference between the two procedures as to the state objective of protection of unemployment compensation and disability benefits from claims of creditors.[26] The assertion of a banker's setoff has exactly the same effect

---

[26]The bank protests that it may not know whether a customer's account contains funds from exempt sources; if it inquired from the depositor he might withdraw the money before the bank could claim its setoff. But in this respect the bank occupies the same position as any other creditor who seeks to satisfy his claim by levy upon a bank

as a third party's levy of execution on the account—it deprives the depositor of the income which the state provided him to meet subsistence expenses, compelling the state either to give him additional money or leave him without means of physical survival.

With the growth of bank-sponsored credit systems, a bank may gather unto itself the debts incurred by a depositor for past living expenses and satisfy by setoff debts which, in the days before Master Charge and Bank Americard, would have been held by many separate merchants and enforceable only through execution.[27] To permit a bank which has thus collected the past obligations of its depositor to satisfy those claims from unemployment insurance deposits would completely defeat the state policy of preserving such deposits for the daily living expenses of the depositor. ▮ We conclude that if, as alleged, plaintiff's account consists of monies derived from unemployment compensation or state disability benefits, the bank may not set off its claims against that account.

Plaintiff Kruger also sues on behalf of the class of recipients of government benefits whose deposits are exempt from attachment and execution under Code of Civil Procedure section 690.18, subdivision (a).[28] Her own deposits, if derived from unemployment and disability benefits, are protected by section 690.175; we are uncertain, however, whether she properly represents the class of persons whose claim to exemption depends upon the provisions of section 690.18. ▮ It is sufficient to decide this appeal upon the ground that plaintiff can state a cause of action individually and on behalf of a more limited class of persons whose deposits are protected by section 690.175.

### 5. Disposition of the instant case.

Under the reasoning of this opinion, the deposit of plaintiff Kruger, as well as those of other recipients of unemployment and disability benefits, is protected from setoff by defendant. Since her complaint states, or can

account; such a creditor can either inquire beforehand, or levy upon the account, taking the risk that he is seizing exempt property. The only difference lies in the fact that since a setoff requires no act of a state officer, the debtor cannot file a claim to exemption with a levying officer, but must seek judicial relief.

[27]See Stillwater, *The California Banker's Lien Law: A Reappraisal of a Creditor's Remedy in a New Economic Context* (1972) 27 Bus. Law. 777, 781-782.

[28]Quoted in footnote 1, *supra*.

be amended to state,[29] a cause of action against defendant, the trial court erred in sustaining the demurrer without leave to amend.

The judgment is reversed.

Wright, C. J., McComb, J., Mosk, J., Burke, J., Sullivan, J., and Clark, J., concurred.

---

[29]See footnotes 2 and 4, *supra.*