955 P.2d 1108

**In re SRBA Case No. 39576—Basin–Wide Issue # 5A (General Provision # 2—Reynolds Creek) Entered July 19, 1996.**

**STATE of Idaho, Jerry Hoagland, Payette River Water Users Association, Inc., Appellants,**

v.

**IDAHO CONSERVATION LEAGUE, Idaho Rivers United, Idaho Wildlife Federation, Boise–Kuna Irrigation District, New York Irrigation District, Wilder Irrigation District, Big Bend Irrigation District and United States of America, Respondents.**

Nos. 23340, 23341 and 23342.

Supreme Court of Idaho, Boise, January 1998 Term.

April 6, 1998.

Alan G. Lance, Attorney General; Clive J. Strong and Cheri C. Copsey, Deputy Attorneys General, Boise, for appellant State of Idaho. Clive J. Strong and Cheri C. Copsey argued.

Elam & Burke, P.A., Boise, for appellant Payette River Water Users Association. Scott L. Campbell argued.

Schroeder & Lezamiz Law Office, Boise, for appellant Hoagland. John T. Schroeder argued.

Lawrence J. (Laird) Lucas, Boise, argued for respondent Idaho Conservation League.

Betty Richardson, United States Attorney, Boise; William B. Lazarus, Department of Justice, Washington, DC, for respondent United States of America, argued. William B. Lazarus argued.

Hawley, Troxell, Ennis & Hawley, Boise, for respondent Boise–Kuna Irrigation District, et al., waived participation.

SILAK, Justice.

A Special Master of the Snake River Basin Adjudication (SRBA) district court struck General Provision 2 from the Director's Report for Reporting Area 2 (Basin 57). That area is also known as the Reynolds Creek Basin, and was the subject of an earlier general adjudication (the Reynolds Creek Adjudication). The Special Master further ruled that the doctrine of *res judicata* did not require him to accept and adopt the Reynolds Creek Decree. The district court affirmed the Special Master, and the State of Idaho, Jerry Hoagland, and the Payette River Water Users Association, Inc. (collectively referred to as the Appellants) appeal.

## I.

### FACTS AND PROCEDURAL BACKGROUND

**A. Facts.**

At issue in this case is General Provision 2, contained within the Idaho Department of Water Resources (IDWR) Director's Report for Reporting Area 2 (Basin 57). General Provision 2 concerns the administration of so-called "excess flow" water in the Reynolds Creek Basin. The provision is the resolution of an on-going dispute between water users in the "Upper Basin" and those in the "Lower Basin" of Reynolds Creek.

A general adjudication for Reynolds Creek was commenced in 1978 to determine the respective water rights in that basin. A final decree was issued on March 18, 1988. In that decree, the district court not only determined the respective rights of water users within Reynolds Creek, but also decreed rights to "excess water," based upon a stipulation by the parties.

Reynolds Creek, a mountain stream, is located in Owyhee County. The term "excess" water refers to the fact that during spring runoff, the flow in Reynolds Creek is high, and the creek contains more water than can be used. However, later in the year, the flow becomes nearly nonexistent. General Provision 2 is identical to a stipulation entered into by the parties during the Reynolds Creek Adjudication, and filed with the Third Judicial District Court on March 4, 1988 (the Reynolds Creek Adjudication Stipulation). That stipulation was based on historic practices in the Reynolds Creek Basin regarding "excess" water.

General Provision 2 is included in full as Attachment A to this opinion. To summarize its provisions, "excess" water is defined as the amount of water flowing at the Upper Basin Tollgate weir in excess of 37 cubic feet per second (c.f.s.) and the amount of water flowing at the Outlet weir in excess of 57 c.f.s. If the flow at the Tollgate weir is less than 37 c.f.s., or the flow at the Outlet weir is less than 57 c.f.s., the Upper and Lower Basins are administered as one basin. If the flow at the Outlet weir exceeds 57 c.f.s., the Upper Basin Users (Upper Users) are permitted to divert the "excess" amounts, even though diverting those amounts will mean that the Upper Users are diverting more water than that permitted by their respective water rights. Further, the Upper Users are not permitted to store any excess water during the irrigation season.

General Provision 2 also provides that the Lower Basin Users (Lower Users) waived their right to object to the Upper Users' diversion when the flow at the Outlet weir exceeds 57 c.f.s. Lower Users may also apply for a storage permit for Reynolds Creek; however, such a permit is conditional on those users waiving their right to require an Upper User to cease diverting excess water in order to satisfy the storage rights. However, the Lower Users retained the right to

protest storage permit applications by another Lower User.

### B. Procedural Background.

When the Director filed the Director's Report for Basin 57, the Reynolds Creek Basin, he included the stipulation and other provisions of the Reynolds Creek Decree as General Provision 2 to the Director's Report. The State of Idaho, the United States and Jerry Hoagland, who is an Upper User, participated in support of the General Provision 2. The Idaho Conservation League, Idaho Rivers United, and the Idaho Wildlife Federation contested the provision. Those parties held an informal settlement conference, and reached a further stipulation (the SRBA stipulation) regarding the language of General Provision 2. That stipulation was filed with the SRBA District Court on March 4, 1996. The Special Master found that the only significant difference between the original and the stipulated versions of General Provision 2 was that the latter uses the term "high flow" instead of "excess" water. The Special Master declined to accept the stipulation before hearing evidence and argument regarding the necessity of any general provisions.

After hearing evidence and argument on the matter, the Special Master ruled that General Provision 2 would not be decreed, because it was not necessary to define or administer water rights. Further, the Special Master held that *res judicata* did not require the SRBA district court to accept and adopt General Provision 2, because the parties in the SRBA and the Reynolds Creek Adjudication were not identical; the SRBA involved a different claim; and because no rights to "excess" water were determined in the Reynolds Creek Adjudication.

The State of Idaho, Jerry Hoagland, the Conservation Groups, the Payette River Water Users Association, Boise–Kuna Irrigation District, Wilder Irrigation District, New York Irrigation District, and Big Bend Irrigation District challenged the Special Master's findings on appeal to the district court. The court adopted the Special Master's Report and Recommendation, as well as its findings of fact and conclusions of law.

## II.

### ISSUES

The issues on appeal are:
1. Whether General Provision 2 properly describes a right to divert "excess" water or "high flows" in the Reynolds Creek Basin.
2. Whether General Provision 2 is necessary for the efficient administration of a water right.
3. Whether the Reynolds Creek Decree is *res judicata* as to the use of excess water in the Reynolds Creek Basin.

## III.

### STANDARD OF REVIEW

■ This case requires this Court to consider whether General Provision 2 should be included in the SRBA decree. Whether a General Provision from the Director's Report should be included in the SRBA decree presents a mixed question of law and fact over which we conduct free review. *State v. Nelson*, 131 Idaho 12, 14, 951 P.2d 943, 945 (1998).

## IV.

### ANALYSIS

It is important to note at the outset what the district court did *not* rule. Contrary to the Appellants' assertion, the district court did not rule that the Reynolds Creek Decree was void. Rather, the district court ruled that because the parties and issues differed, the Reynolds Creek Decree was not entitled to *res judicata* and collateral estoppel effects in the SRBA.

### A. General Provision 2 Does Not Properly Describe A Right To Divert "Excess" Water Or High Flows In The Reynolds Creek Basin.

■ During the course of litigation regarding General Provision 2, the parties involved in the Reynolds Creek portion of the SRBA devised a stipulation modifying that general provision's terms. We agree with the district court that the only significant

difference between the original general provision and that reached by stipulation is that the term "high flow" was substituted for "excess" water. The effect of the two provisions is identical, as the parties agreed. Therefore, we will consider the "original" General Provision 2.

The SRBA district court ruled that General Provision 2 would not be decreed because that provision did not contain the elements of a water right, thereby defining a water right, and because it was not necessary for the administration of a water right. For several reasons, we agree with the district court that General Provision 2 does not set forth the elements of a water right, and that the water users in the Reynolds Creek Basin do not have a water right in the excess water.

First, we have ruled in a companion case to this one that "excess" water cannot be decreed as a water right. *A & B Irrigation Dist. v. Idaho Conservation League,* 97.20 ISCR 971, 973, —— Idaho ——, ——, 958 P.2d 568, 573 (Oct. 3, 1997). General Provision 2 does not set forth a priority date, quantity, legal description of the place of use, nor any of the other elements of a water right. Second, our conclusion that the Reynolds Creek water users have not established a legal water right to excess flows is bolstered by express language in Paragraph 5(a) of the provision itself, which states that: "The parties to this Stipulation [the Reynolds Creek Adjudication Stipulation] do not intend hereby to establish or set the priorities or quantities of any rights to excess water, or to establish that any presently perfected right does or does not include or authorize the use of excess water." In addition, Paragraph 3(b) provides, in relevant part, that "the Lower Users shall not have the right to object to the diversion by the Upper Users of water *in excess of the amounts specified for their respective water rights* in the Findings, or to require that the Upper Users *limit their diversions to the amounts specified for their respective water rights* in the Findings." (Emphasis added).

Although Idaho Code § 42–1411(2) provides that "[t]he director shall determine the following elements, *to the extent the director deems appropriate and proper,* to define and administer the water rights acquired under state law ...," thereby giving the director some discretion in determining which elements to include in his report, the elimination of all of the elements of a water right, particularly the essential elements of priority date and quantity, vitiates the existence of a legal water right in the "excess" water. (Emphasis added).

Thus, General Provision 2 does not establish a water right to "excess" water. The district court did not err in so holding.

## B. A General Provision Dealing With The Administration Of Water Rights Is Statutorily Authorized.

Despite our holding that General Provision 2 does not establish any rights to a water right to "excess" water, the question remains whether General Provision 2 is "necessary ... for the efficient administration of the water rights." I.C. § 42–1412(6). The argument has been made that if the "excess" water is not subject to a water right, a general provision regarding "excess" water cannot be necessary for the efficient administration of a water right, because there is no right to administer. We disagree, and further note that this issue was not squarely faced by the trial court, because the issue was not framed in that manner.

Idaho Code § 42–1412(6) states, in relevant part, that "[t]he decree shall also contain an express statement that the partial decree is subject to such general provisions necessary for the definition of the rights *or for the efficient administration of the water rights.*" (Emphasis added). In a case in which we upheld the validity of the portions of the Idaho Code which permit general provisions in a decree, we stated that "the requirement that the district court include in its decree those provisions necessary for the executive to administer the rights decreed is not an impermissible delegation." *In re SRBA Case No. 39576,* 128 Idaho 246, 262, 912 P.2d 614, 630 (1995). We also noted the following:

"But because it was within the legislative power to provide administrative machinery to supervise the common use of water in a

flowing stream by those having a lawful right to appropriate the water of that stream for beneficial use, it does not result that the decree entered by the court below was in excess of its authority. On the contrary in view of the absence of legislative action on the subject, and of the necessity which manifestly existed for supervising the use of the stream by those having the right to take the water in accordance with the decree which, undoubtedly to that extent, the court was authorized to render, we think the action taken by the court did not transcend the bounds of judicial authority, and therefore is not justly amenable to the attack made upon it."

*Id.* (quoting *Silkey v. Tiegs*, 51 Idaho 344, 358, 5 P.2d 1049, 1055 (1931)). Therefore, the law is clear that provisions which set forth or clarify the manner in which water is to be administered may be included in a water rights decree.

The issue of whether I.C. § 42–1412(6) means that "excess" water may be administered along with existing rights, even though there is no water right in the "excess" water itself, is a question of statutory interpretation. We recently set forth the rules we use when interpreting a statute:

> The question ... turns on interpretation of a statute, which is a question of law over which the Court exercises free review ... [I]f the statutory language is clear and unambiguous, the Court need merely apply the statute without engaging in any statutory construction. Statutory interpretation begins with the words of the statute, giving the language its plain, obvious, and rational meanings.

*State v. Hagerman Water Right Owners, Inc.*, 130 Idaho 727, 732, 947 P.2d 400, 405 (1997) (citations omitted). Further, I.C. § 73–113 provides that "[w]ords and phrases are construed according to the context and the approved usage of the language."

■ The language used in I.C. § 42–1412(6) is disjunctive, not conjunctive. In order to be included in a final decree, a general provision need not be necessary to define *and* administer a water right. Instead, the provision need only be necessary to define *or* administer a water right. Fur-

ther, nothing in the statute requires that a general provision be on equal footing with a water right. In other words, the provision need not be a right or set forth a right in and of itself, but may be included in a decree if it is necessary to administer the rights set forth in the body of the decree.

In a companion case to this one, *A & B Irrigation Dist.*, we ruled that a firefighting provision would be decreed because "[t]he proposed provision provides that firefighting purposes is an alternate use for which *any* water right may be used, and firefighting is recognized as a lawful use of water with or without a water right." *A & B Irrigation Dist.*, 97.20 ISCR at 972, —— Idaho at ——, 958 P.2d at 572. Firefighting use is ancillary to existing water rights, and that provision is necessary to efficiently administer water rights. Similarly, while General Provision 2 does not set forth a water right in "excess" water, it does describe a procedure by which those who have water rights may use "excess" water, and the provision thus may be necessary for the efficient administration of water rights.

### C. General Provision 2 Is Necessary For The Efficient Administration Of Water Rights In The Reynolds Creek Basin.

■ In this case, the record clearly reflects that there was testimony regarding the historical practice of using "excess water" or "high flows." It is a system of water use which has apparently been used successfully for decades in the Reynolds Creek Basin. As we have already stated, General Provision 2 lacks the statutorily required elements and therefore does not establish the right to use excess water. However, it does describe a long-standing system of allowing those who otherwise have water rights in the Reynolds Creek Basin to use excess water when it is available. There was testimony during the proceedings before the Special Master and district judge regarding historic practices in the Reynolds Creek Basin regarding "excess" water, and the necessity of having such a general provision. This provision assures the efficient administration of the water rights because it avoids controversy among

the water rights holders by clearly notifying them of the mechanism for the administration of excess water in the Reynolds Creek Basin. Thus, the efficient administration of water within the Reynolds Creek Basin depends on the system mandated by General Provision 2, and General Provision 2 is necessary to govern the administrative role of the IDWR. We therefore hold that General Provision 2 should be included in the SRBA decree, and we vacate the district court's order in this regard.

■ Although it is not permissible for a court to be required to actively administer the rights in its decree, the general provisions are binding once they become part of the decree, and the executive branch will be required to administer the water rights in conformity with the decree in this case. *See, e.g., In re SRBA Case No. 39576,* 128 Idaho at 262, 912 P.2d at 630. If it no longer becomes possible to administer the water in Reynolds Creek in accordance with General Provision 2, or if anyone wishes to change the way "excess" water is administered in the Reynolds Creek Basin, those modifications *must be accomplished by an amendment to* the General Provision.

Because we are vacating the district court's order and holding that General Provision 2 should be included in the Basin 57 portion of the SRBA decree, we need not reach the additional issue of whether *res judicata* or collateral estoppel principles require that the Reynolds Creek Decree be included in the SRBA decree. *See Kennedy v. Forest,* 129 Idaho 584, 588, 930 P.2d 1026, 1030 (1997) (holding that "[d]ue to our decision remanding this case to the Commission for a determination of whether an employment relationship existed based on an implied-in-fact contract, we need not reach [the additional issues on appeal]"); *State v. Hobby Horse Ranch Tractor & Equipment Co.,* 129

Idaho 565, 568, 929 P.2d 741, 744 (1996) (holding that "[b]ecause we hold that Hobby Horse waived its right to object to the Demand, we do not reach the issues raised by Hobby Horse in its appeal").[1]

## V.

### CONCLUSION

We hold that General Provision 2 does not contain the necessary elements of a water right, and those in the Reynolds Creek Basin therefore do not have a water right to "excess" water. However, those who have other water rights in that basin are part of a long-standing practice of utilizing "excess" water, and to that extent, we hold that General Provision 2 is necessary to the efficient administration of water rights in that basin. The judgment of the district court is affirmed in part, and vacated in part and remanded for further proceedings in accordance with this opinion.

No attorney fees or costs on appeal are awarded.

SCHROEDER and WALTERS, JJ., and DRESCHER, J. Pro Tem, concur.

JOHNSON, Justice, concurring in part and dissenting in part.

I concur with the Court's opinion, except for part IV(B) (A General Provision Dealing With The Administration Of Water Rights Is Statutorily Authorized) part IV(C) (General Provision 2 Is Necessary for the Efficient Administration of Water Rights in the Reynolds Creek Basin), and the portion of part V (Conclusion) that vacates the judgment of the district court, from which I respectfully dissent.

I.C. § 42–1411(3) provides: "The director may include such general provisions in the

---

1. In reviewing the record in this appeal, we noted a potential subject matter jurisdiction issue in this case. The Reynolds Creek Decree was issued on March 23, 1988, four months *after* the SRBA was commenced on November 19, 1987. The law in Idaho is that "once SRBA was commenced, jurisdiction to resolve all of the water rights claims within the scope of the general adjudication is in the SRBA district court only." *Walker v. Big Lost River Irr. Dist.,* 124 Idaho 78,

81, 856 P.2d 868, 871 (1993). If we were called upon to determine the validity of the Reynolds Creek Decree, we would be squarely confronted with this issue. However, the appeal before us concerns the appropriateness of General Provision 2 of the Director's Report for the Reynolds Creek Basin, not the validity of the Reynolds Creek Decree itself. Thus, we need not address the subject matter jurisdiction issue.

director's report, as the director deems appropriate and proper, *to define and to administer all water rights."* (Emphasis added). Both the district court and this Court agree that General Provision 2 does not establish any rights to the use of excess water. Therefore, in my view, there is no basis for including General Provision 2 in the SRBA decree. The Court's attempt to salvage General Provision 2 as necessary for the administration of the decreed water rights in the Reynolds Creek Basin is erroneous because General Provision 2 attempts to administer the use of excess water, the rights to which have not been decreed.

In my view, res judicata (claim preclusion) does not require the inclusion of General Provision 2 in the SRBA because the SRBA does not involve the same parties or their privies as those who stipulated to the Reynolds Creek Adjudication Stipulation. Also, collateral estoppel (issue preclusion) does not require the inclusion of General Provision 2 in the SRBA decree because the rights to excess water were not decreed in the Reynolds Creek Decree.

I would affirm the district court in all respects.

## ATTACHMENT A

GENERAL PROVISION 2: ADMINISTRATION OF RIGHTS TO WATER FROM THE REYNOLDS CREEK WATER SYSTEM.

The following language is from the "Stipulation by Certain Defendants for Entry of Decree Adjudicating Water Rights", incorporated in the decree filed March 23, 1988, in the Reynolds Creek Adjudication, Owyhee County Civil No. 3456. The boundaries of the Reynolds Creek water system are shown in Figure 1. This language addresses the administration of water rights from the Reynolds Creek water system and is incorporated verbatim herein [explanatory language is added in brackets]:

3. There shall be two different methods of administering the water rights in Reynolds Creek, dependent upon whether there is "excess" water in Reynolds Creek at a given time, with "excess" water being de-

fined as the amount of water in excess of 37 CFS flowing in Reynolds Creek at the upper Basin Tollgate weir, hereinafter identified, at any time when the flow at the Outlet weir, hereinafter identified, is more than 57 CFS. The Upper Basin Tollgate weir is located on Reynolds Creek in the SE¼ SW¼ of Section 24, Township 3 South, Range 4 West, B.M., and the Outlet weir is located on Reynolds Creek in the NE¼ SE ¼ of Section 12, Township 2 South, Range 4 West, B.M., Owyhee County, Idaho.

(a) Distribution During Periods of Water Shortage. During any period when the flow at the Upper Basin tollgate weir is at or less than 37 CFS, or the flow at the Outlet weir is at or less than 57 CFS, the Upper Reynolds Creek Basin and the Lower Reynolds Creek Basin shall be administered as one water district under one watermaster, in accordance with the water rights set forth in the Findings [list of recommended water rights for the Reynolds Creek water system], and any subsequent permits or licenses which have been or may be issued by the Department of Water Resources. [Upper and Lower Reynolds Creek Basins are illustrated in Figure 1.]

(b) Distribution During Periods of Excess Water. When the flow of water at the Outlet weir is more than 57 CFS, the Lower Users shall not have the right to object to the diversion by the Upper Users of water in excess of the amounts specified for their respective water rights in the Findings, or to require that the Upper Users limit their diversions to the amounts specified for their respective water rights in the Findings. The intent of this provision is that the Upper Users shall have the first opportunity to use "excess" water, so long as the flow of water at the Outlet weir is more than 57 CFS.

4. A watermaster may be called on at any time during the irrigation season, notwithstanding that there may be "excess" water flowing in Reynolds Creek at or above the Outlet weir.

5(a). The Upper Users shall not store excess water during the irrigation season, except as such storage is authorized and

recognized in the findings, or storage for which licenses are subsequently issued under water permits numbers 57-7400, 57-7454, 57-7472 or 57-7473 to the extent, if any, that those permits authorize storage during the irrigation season, and Junayo Ranch Limited Partnership (Junayo Ranch), holder of those permits, acknowledges that no excess water feature or element is included in or authorized by those permits. The Upper Users shall not increase the capacities of their diversion facilities or their storage facilities as the capacities of those facilities existed on June 22, 1987, or were authorized by water permits issued, or application for permits filed with the Director, prior to October 14, 1987. Any Lower User who makes an application for permit to appropriate waters of Reynolds Creek for storage purposes shall not have the right to require any Upper User to cease diverting any "excess" water in order to satisfy the new storage right which might be acquired pursuant to an such application. The Lower Users reserve the right, among themselves, to protest any application by another Lower User for a permit to appropriate water of Reynolds creek for storage purposes. The intent of this paragraph, as between the Upper Users and the Lower Users, is to furnish the Lower Users an opportunity to store any "excess" water, as defined herein, which remains available when the Upper Users are diverting water to the extent of the capacity of their presently existing facilities. The parties to this Stipulation do not intend hereby to establish or set the priorities or quantities of any rights to excess water, or to establish that any presently perfected right does or does not include or authorize the use of excess water.

5(b). The parties to this Stipulation acknowledge an historical practice of rotation irrigation during times of water shortage. Where a water right has more than one point of diversion, or where there are multiple water rights with multiple points of diversion in a single ownership, the amount of water that may be diverted is determined according to priority. However, the full amount of water diverted may be diverted through less than all of the points of diversion decreed for the water right or less than all of the points of diversion decreed for multiple water rights in a single-land ownership. This practice results in the point of diversion or the place of use for specific water right in a single-land ownership being different from the point of diversion and/or the place of use listed in the Director's findings. However, the water is diverted and applied to a point of diversion and place of use listed for that single ownership in the Director's findings. A single ownership is to be determined based upon contiguous places of use decreed to a single entity in this adjudication. This practice has allowed for the more efficient use of the water during times of shortage on the ranches as they are now owned. This practice will not be disturbed by the parties to this Stipulation.

6. Junayo Ranch, for itself and as successor in interest to C.T. Ranch Company and Junayo Ranch Company, former Upper Users agrees, that its water rights other than No. 57-2325 and No. 57-7040 do not entitle it to divert water to storage during the irrigation season, even though it may be physically possible to divert water into its storage facilities during the irrigation season, and that no diversion to storage is authorized under their rights Nos. 57-2325 and 57-7040 during the irrigation season unless all prior water rights on Reynolds Creek are being satisfied. Junayo Ranch further agrees that (1) storage capacity under permit No. 57-7454 shall not exceed twenty-five acre feet per annum (25 AFA) [AFY], (2) storage under any permit issued pursuant to application no. 57-7473 shall not exceed fifty acre feet per annum (50 AFA), (3) storage under permit no. 57-7454 combined with storage under any permit issued pursuant to application No. 57-7473 shall not exceed seventy-five acre feet per annum (75 AFA), and storage under any permit issued pursuant to application No. 57-7472 shall not exceed ten acre feet per annum (10 AFA) for the storage pond identified in that application, and Junayo Ranch further agrees that the condition or conditions imposed by the Director of the Idaho Department of Water

338

Resources in any water permit now held by Junayo Ranch, or in any permit issued to Junayo Ranch pursuant to an application identified in this Stipulation, or any condition with respect to any such water permit, now held or hereafter issued to Junayo Ranch, imposed by this Stipulation or by an agreement between it and all of the other parties to this Stipulation, shall be carried forward into any supplemental decree entered in this action or any decree entered in any other action adjudicating the rights to the use of the waters of Reynolds Creek.