T.G. NELSON, Circuit Judge:
The bank in which Cindy Lares had deposited the proceeds of the sale of her home exercised its contractual right to offset the funds in the account against a preexisting business debt personally guaranteed by Lares. She appeals the district court’s order affirming the bankruptcy court’s decision denying her claim that the funds were exempt from setoff.
FACTS AND PROCEDURAL HISTORY
Cindy Lares (“Lares”) and her then husband, Michael, were sole owners of a small incorporated business. The business borrowed approximately $70,000 in two separate transactions from West One Bank, now U.S. Bank (“Bank”) and Lares personally guaranteed the corporate indebtedness reflected in the two notes. Both guaranties contained the following language:
LENDER’S RIGHT TO SETOFF. In addition to all liens upon and rights of setoff against the moneys, securities or other property of Guarantor given to Lender by law, Lender shall have, with respect to Guarantor’s obligations to Lender under this Guaranty and to the extent permitted by law, a contractual possessory security interest in and a right of setoff against, and Guarantor hereby assigns, conveys, delivers, pledges, and transfers to Lender all of Guarantor’s right, title and interest in and to, all deposits, moneys, securities and other property of Guarantor now or Hereafter in the possession of or on deposit with Lender, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding however all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to Guarantor.
The Lares’ marriage later ended in divorce. Their home was sold, and $26,000 of the sale proceeds was deposited with *1168 the Bank in an account which was ultimately awarded to Lares in the property settlement. When the notes went into default, the Bank offset the $26,000 against the approximately $50,000 still due on the notes. Lares later filed a petition in bankruptcy and claimed that the $26,000 was exempt under Idaho Code § 55-1008, which provides, in pertinent part:
55-1008. Homestead exempt from execution—When presumed valid.—(1) Except as provided in section 55-1005, Idaho Code, the homestead is exempt from attachment and from execution or forced sale for the debts of the owner up to the amount specified in section 55-1003, Idaho Code. The proceeds of the voluntary sale of the homestead in good faith for the purpose of acquiring a new homestead ... shall likewise be exempt for one (1) year from receipt, and also such new homestead acquired with such proceeds.
The bankruptcy court denied Lares’ claim that the amount was exempt from the Bank’s right of setoff, and the distinct court affirmed. This timely appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 158(d) and affirm.
STANDARD OF REVIEW
We review de novo the district court’s decision on an appeal from a bankruptcy court. See In re Wilbur, 126 F.3d 1218, 1219 (9th Cir.1997). “In bankruptcy actions, the federal courts decide the merits of state exemptions, but the validity of the claimed state exemption is controlled by the applicable state law.” In re Anderson, 824 F.2d 754, 756 (9th Cir.1987). We are bound by Idaho rules of construction in our interpretation of the statute at issue. See id. We therefore look to decisions of the Idaho courts to guide us in this task.[1]
ANALYSIS
The provisions of § 55-1008 exempt the homestead, or the proceeds of its sale, from attachment, execution and forced sale. Since none of these events occurred here, Lares argues that the statute should be “construed” to include exemption from rights of setoff.
Lares principally relies on Kruger v. Wells Fargo Bank, 11 Cal.3d 352, 113 Cal.Rptr. 449, 521 P.2d 441 (1974). In that case, the defendant bank had exercised its right of setoff against Ms. Kruger’s account. Her account contained only funds derived from checks for unemployment compensation and state disability benefits. The relevant provisions of California law exempted the payments from attachment and execution. The California Supreme Court held that the account was exempt from setoff, even though the exemption statute listed only attachment and execution as remedies against which the account was immune.
The court rested its decision on earlier California law which, it said, limited the right of setoff “in order to carry out state policies protecting the interest of the debt- or.” Id. at 451 n. 24. It closed its analysis by saying that although setoff varied from attachment and execution because it did not require the aid of a state official, “there is no relevant difference between the two procedures as to the state objective of protection of ... benefits from claims of creditors.” Id. at 452.
There are at least two problems with the Kruger decision as applied to this case. First, the court there was considering a general right of setoff. In contrast, here we are dealing with an express contractual right of setoff granted by the account holder.
*1169 Second, and perhaps most telling, the California court in Kruger displayed a ready willingness to rewrite the applicable statute to arrive at the desired result. Idaho courts have not shown themselves to be so willing to ignore what the legislature has said.
The Idaho Supreme Court begins its review of a statute by looking at the words of the statute. If there is no ambiguity, then the statute is simply applied as written: “ ‘[I]f the statutory language is clear and unambiguous, the Court need merely apply the statute without engaging in any statutory construction. Statutory interpretation begins with the words of the statute, giving the language its plain, obvious, and rational meanings.’ ” State v. Idaho Conservation League, 131 Idaho 329, 955 P.2d 1108, 1113 (1998) (quoting State v. Hagerman Water Right Owners, Inc., 130 Idaho 727, 947 P.2d 400, 405 (1997)).
This approach to our review of Idaho Code § 55-1008 can lead to but one conclusion: The statute is clear on its face and there is no room for construction of its terms. “Attachment,” “execution” and “forced sale” involve judicial proceedings. By no stretch of its plain language can the statute be deemed to include a voluntary, contractual right of setoff.
If we were to assume, for the sake of complete analysis, that an Idaho court would ignore the teachings of the above cases and launch into a construction of the statute, the next level of interpretation would also not help Lares. The Idaho Supreme Court applies the maxim expressio unius est exclusio alterius, “the expression of one thing is the exclusion of another,” in interpreting a statute. See State v. Michael, 111 Idaho 930, 729 P.2d 405, 408 (1986). In Michael, the court said: “When a statute enumerates the areas which are to be encompassed in its enforcement, it is generally accepted that those areas not specifically mentioned are not to be included. In other words, the specific mention of one thing implies the exclusion of another; expressio unius est exclusio alterius.” Id.
The statute specifically sets out three acts against which the homestead is immune: execution, attachment and forced sale. There is no room, under the statutory construction rules established by the Idaho Supreme Court, to include “contractual setoff’ in the list of acts against which the homestead is secure. We therefore conclude that the courts of Idaho would not apply the statute in such a manner as to protect the proceeds of the voluntary sale of a homestead from a voluntary contractual setoff, and Lares’ claim based on the terms of Idaho Code § 55-1008 must fail.
Lares also argues 'that the contract of guarantee should be construed to include proceeds of the sale of a homestead in the list of accounts as to which setoff would not take place. This claim founders on at least one of the same rocks as does the statutory argument.
Idaho courts apply the exclusio rule to contracts also. See Ace Realty, Inc. v. Anderson, 106 Idaho 742, 682 P.2d 1289, 1296 (Ct.App.1984). Here the contract specifically listed IRA, Keogh and trust accounts as not included in the deposits subject to setoff. This listing necessarily excludes accounts containing proceeds from the sale of a homestead.
Finally, Lares contends that the contract’s use of the term “to the extent permitted by law” requires a construction of the contract that insulates her account from setoff. In context, Lares is putting more weight on the phrase than it will bear. The term is one of extension so that the scope of the setoff agreed to by Lares was as broad as it could lawfully be. Lares has not argued that any statute, except § 55-1008, precludes or limits the Bank’s right of setoff. As we have pointed out, however, that section does not apply to setoffs.
*1170 CONCLUSION
We have considered the other arguments made by Lares, and determined that they have no merit. For the reasons stated above, the judgment appealed from is AFFIRMED.

. At oral argument, we asked counsel if there was any interest in having us certify the question to the Idaho Supreme Court pursuant to Idaho Appellate Rule 12.1. Counsel were in agreement that they did not desire certification, given the lapse of time and the relatively small amount involved. Our review of the controlling Idaho authority convinces us that the result is clear and that certification would not be appropriate.