**Robert G. MILLER, Plaintiff—Appellee,**

v.

**The KROGER CO., Defendant—Appellant.**

No. 02–35137.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 4, 2003.

Decided Nov. 25, 2003.

Jeffrey S. Gordon, Esq., Kaye, Scholer, Fierman, Hays & Handler, Los Angeles, CA, Jonathan M. Hoffman, Esq., Martin Bischoff, LLP, Portland, OR, for Plaintiff–Appellee.

Richard L. Baum, Esq., Jeffrey C. Dobbins, Esq., Perkins Coie, LLP, Portland, OR, for Defendant–Appellant.

Before: ALARCÓN, FERGUSON, and RAWLINSON, Circuit Judges.

MEMORANDUM *

The Kroger Company ("Kroger") seeks reversal of the partial summary judgment entered in favor of Robert G. Miller. We affirm because we conclude that the non-competition clause of the employment agreement is unenforceable under Or.Rev. Stat. § 653.295.

Because the parties are familiar with the facts, we repeat them here only as is necessary to our disposition.

I

Kroger argues that the non-competition clause is enforceable because it satisfies one of the exceptions provided for in Or. Rev.Stat. § 653.295. We review grants of summary judgment de novo to determine whether there exists a genuine issue as to any material fact, viewing the evidence in the light most favorable to the non-moving party. *Glenn K. Jackson Inc. v. Roe,* 273 F.3d 1192, 1196 (9th Cir.2001). We also review questions of state substantive law de novo, *Reese v. Travelers Ins. Co.,* 129 F.3d 1056, 1059–60 (9th Cir.1997), applying state law principles of statutory interpretation. *Lares v. West One Bank,* 188 F.3d 1166, 1168 (9th Cir.1999).

Under Oregon law, agreements not to compete in the employment context violate public policy unless they satisfy one of three narrow exceptions. Or.Rev.Stat. § 653.295. First, non-competition agreements are enforceable if they are "entered into upon the [i]nitial employment of the employee with the employer." Or.Rev. Stat. § 653.295(1)(a). Second, non-competition agreements are enforceable if they are "entered into upon the [s]ubsequent

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

bona fide advancement of the employee with the employer." Or.Rev.Stat. § 653.295(1)(b). Finally, such agreements are enforceable if they are "bonus restriction agreements" under Oregon law. Or. Rev.Stat. § 653.295(4).

The Supreme Court of Oregon has not interpreted the words "initial employment," "bona fide advancement," or "bonus restriction agreement" in the context of Or.Rev.Stat. § 653.295, or otherwise.

Kroger argues that the 1998 Fred Meyer employment agreement comes within the first exception to Or.Rev.Stat. § 653.295 because it was entered into on October 13, 1998 in contemplation of the merger between Fred Meyer and Kroger. The 1998 Fred Meyer agreement was assumed by Kroger as part of the merger agreement.

The merger became effective on May 27, 1999. Almost four months later, Mr. Miller and Kroger signed a new employment contract on September 16, 1999, with a July 22, 1999 effective date ("the Kroger agreement"), Kroger also asserts that Mr. Miller and Kroger entered into an unwritten employment agreement on the date the merger took effect.

The Court of Appeals of Oregon has interpreted "initial employment," as that term is used in Or.Rev.Stat. § 653.295, in two decisions. In *Pac. Veterinary Hosp., P.C. v. White*, 72 Or.App. 533, 696 P.2d 570 (1985), the Court of Appeals held that a non-competition agreement entered into one year after an employee started working was void because it was outside the employee's initial employment. *Id.* at 537, 696 P.2d 570. In *Bouska v. Wright*, 49 Or.App. 763, 621 P.2d 69 (1980), the Court of Appeals concluded that a non-competition agreement signed three days after the day that the employee started work was valid because it was "contemporaneous"

with the employee's initial employment. *Id.* at 768, 621 P.2d 69.

The Supreme Court of Oregon has instructed that, in interpreting a statute, "words of common usage typically should be given their plain, natural, and ordinary meaning." *Portland Gen. Elec. Co. v. Bureau of Labor & Indus.*, 317 Or. 606, 611, 859 P.2d 1143 (1993) (citations omitted). The plain meaning of the word "initial" is "relating to, or occurring at the beginning." *The American Heritage Dictionary of the English Language* (4th ed.2000). "Employment" means "the state of being employed." *Id.* "Employed" means "to engage the services of; put to work." *Id.* We are persuaded that the Supreme Court of Oregon would construe the words "initial employment" as referring to the first few days an employee begins to serve his or her employer.

The 1998 Fred Meyer agreement was negotiated with a different employer, before the merger occurred. Thus, it was not entered into when Mr. Miller began to serve Kroger.

■ The district court found that Kroger presented no evidence of an oral non-competition agreement. The record does not support Kroger's contention that an oral employment agreement containing a non-competition clause was entered into on Mr. Miller's initial employment. The Kroger agreement did not take effect until July 22, 1999, almost two months after Mr. Miller's initial employment with Kroger. Thus, it was not executed contemporaneously with the date Mr. Miller began his service. The Kroger agreement does not come within the first exception to Or.Rev. Stat. § 653.295.

## II

Kroger also asserts that the non-competition agreement comes within the "bona

fide advancement" exception. In *Pac. Veterinary Hosp.*, in dicta, the Court of Appeals of Oregon equated a "bona fide advancement" with an actual promotion. 72 Or.App. at 538 n. 3, 696 P.2d 570. This is the only indication from the Court of Appeals of Oregon as to how its Supreme Court would interpret the words "bona fide advancement." Absent binding authority, we again turn to the dictionary to determine the plain meaning of "subsequent bona fide advancement."

"Subsequent" means "following in time or order; succeeding." *American Heritage Dictionary.* In the context of Or. Rev.Stat. § 653.295(1), "subsequent" means after initial employment. "Bona fide" means "authentic; genuine." *Id.* "Advancement" means "a promotion, as in rank." *Id.* Bringing these definitions together, a "subsequent bona fide advancement" means a genuine promotion in rank after initial employment. This interpretation is consistent with the two federal district court decisions that have addressed this provision of Or.Rev.Stat. § 653.295. *See First Allmerica Fin. Life Ins. Co. v. Sumner,* 212 F.Supp.2d 1235, 1241 (D.Or. 2002) (noting that an increase in pay or benefits was not sufficient to be considered a "bona fide advancement"); *Nike, Inc. v. McCarthy,* 285 F.Supp.2d 1242, 1245–46, 1246–47 (D.Or.2003) (considering several factors including increased pay, responsibilities, and compensation, to find that a non-competition agreement was enforceable).

Mr. Miller did not receive an increase in salary or benefits, or a change in his responsibilities under the Kroger agreement. We conclude, therefore, that the bona fide advancement exception to Or.Rev.Stat. § 653.295 is inapplicable.

## III

Kroger also argues that the non-competition clause is an enforceable "bonus restriction agreement" rather than an unenforceable non-competition agreement. Kroger maintains that the plain meaning of "bonus compensation" includes "severance compensation" because it is in excess of the usual compensation that would otherwise be given to an employee.

Bonus restriction agreements are enforceable. Or.Rev.Stat. § 653.295(4) ("Subsection (1) of this section does not apply to bonus restriction agreements, which are lawful agreements that may be enforced by the courts in this state"). "The penalty imposed on the employee for competition against the employer is limited to forfeiture of profit sharing or other bonus compensation that has not yet been paid to the employee." Or.Rev.Stat. § 653.295(6)(a)(C). At issue in this appeal is whether the contested non-competition provision "is limited to ... other bonus compensation." No Oregon court has previously interpreted the term "other bonus compensation." Applying the principle of *ejusdem generis,* "a nonspecific or general phrase that appears at the end of a list of items in a statute is to be read as referring only to other items of the same kind." *Vannatta v. Keisling,* 324 Or. 514, 533, 931 P.2d 770 (1997) (citation omitted). Therefore, "other bonus compensation" must be of the same kind as profit sharing. "Profit sharing" is "a system by which employees receive a share of the profits of a business enterprise." *American Heritage Dictionary.* To be logically of the same kind as profit sharing, "other bonus compensation" must be tied to the company's profits or some other measure of performance, so that the employee and the company share in the positive results. A "bonus" is "a sum of money or an equivalent given to an employee in addition to the employee's usual compensation." *Id.* "Compensation" is "something, such as money, given or

received as payment or reparation, as for a service or loss." *Id.* We believe that the Supreme Court of Oregon would construe "other bonus compensation" as (1) something paid for services, (2) in addition to the employee's usual compensation, (3) because of positive company results or performance measures. In other words, if the company does not make a profit, or if performance expectations are not met, an employee will not receive "other bonus compensation."

■ The only part of the Kroger severance agreement that is related to performance is the pro rata bonus. Mr. Miller's severance pay as a whole is not related to any performance measure. Accordingly, the Kroger agreement is not "limited to ... other bonus compensation" under Or. Rev.Stat. § 653.295.

## IV

Finally, Kroger argues that Or.Rev. Stat. § 653.295 should be read as a narrow restriction intended merely to prevent employers from using "surprise and oppressive tactics" against unsophisticated employees. *Pac. Veterinary Hosp.*, 72 Or. App. at 537–38, 696 P.2d 570. The plain language of the statute does not support Kroger's argument that sophisticated parties are not subject to Or.Rev.Stat. § 653.295. The statute does not make distinctions based on the type of employee, or the employee's or employer's level of sophistication.

Had the Oregon legislature intended to limit the effect of this statute, it had the means at its disposal to specify certain classes of employees, such as executives or officers, as it has done in other contexts. *See, e.g.,* Or.Rev.Stat. § 653.020(3) (exempting certain employees "engaged in administrative, executive or professional work" from minimum wage requirements). It did not do so when drafting Or.Rev.Stat.

§ 653.295, and we lack the authority to insert an exception to the statute that the Oregon legislature omitted.

In summary, we hold that the non-competition clause violates Or.Rev.Stat. § 653.295. We deny the request to certify this matter to the Supreme Court of Oregon.

**AFFIRMED.**